UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                         :

PING CHOW WEI,                    :        ECF CASE
                    Plaintiff,       :        Civil Action No.:
                                  :        2:16-cv-00468(SJF)(AKT)
                                  :

      -against-                 :
                                  :

ANTHEM INC., f/k/a THE WELLPOINT:
COMPANIES, AMERIGROUP CORP.,     :
                    Defendants.   :
                                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANTS ANTHEM INC. F/K/A THE WELLPOINT COMPANIES AND
AMERIGROUP CORP.'S MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Dated: New York, New York
       August 4, 2017

Howard M. Wexler
Kevin R. Brady
SEYFARTH SHAW LLP
620 Eighth Avenue, 32nd Floor
New York, New York 10018
(212) 218-5500

*Attorneys for Defendants Anthem Inc., f/k/a
The WellPoint Companies and Amerigroup Corp.*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT …………………………………………...……………1

STATEMENT OF UNDISPUTED FACTS ……………………………………...……………3

A.   Anthem and Its Policies …..……………………………………………..……………3

B.   Plaintiff's Hiring Employment With Anthem ……………………………………………4

C.   Plaintiff's Planned Retirement ……………… ………………………………..……..7

D.   Plaintiff's July 2014 Report to Anthem's Compliance Hotline…..……………………8

E.   Plaintiff's And Other MPFE's Temporary Assignments to the
Chinatown CSC and Covering Receptionist Duties…..………………………………...10

F.   Plaintiff's Voluntary Resignation From Her Employment…...…..……………………..12

ARGUMENT …………………………………………………………………………13

A.   THE APPLICABLE SUMMARY JUDGMENT STANDARD…………………...……13

B.   PLAINTIFF'S AGE DISCRIMINATION CLAIM SHOULD BE DISMISSED..……14

    1.   Plaintiff Has Failed to Establish a Prima Facie Case of Discrimination ………14

       a)   Plaintiff Cannot Meet Her "Demanding" Burden
To Establish A Constructive Discharge … …..……………………………14

       b)   Plaintiff Cannot Establish that Most, if Not All, Of
The Alleged Discriminatory Acts Constituted
Adverse Employment Actions. ……………………………………… ..16

       c)   Any Alleged Discriminatory Comments Do Not Create
an Inference of Discrimination ……………………………………18

       d)   Plaintiff Fails to Identify a Younger Similarly Situated
Individual Who Was Treated More Favorably …………………………20

    2.   Anthem's Legitimate, Non-Discriminatory Business Reasons for Its
Actions and Plaintiff's Failure to Offer any Evidence of Pre-text ………………21

C.   PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM DUE
TO HER AGE SHOULD BE DISMISSED …………………………………………23

CONCLUSION …………………………………………………………28

## Table of Authorities

**Cases**                                                                                                        **Page(s)**

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997) …………3

*Alfano v. Costello,* 294 F.3d 365, 374 (2d Cir. 2002). ………………………..……………..23, 24

*Aulicino  v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 82 (2d Cir. 2009) ………...…..……23

*Alywahby v. Shinseki,* No. 01-CV-6512 (NGG)(LB),
          2009 WL 5166271, at *4 (E.D.N.Y. Dec. 29, 2009). …………………………...……16

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ………………………………………..13, 22

*Barounis v. New York City Police Dep't*, No. 10–CV–2631,
          2012 WL 6194190, at *9 (S.D.N.Y. Dec. 12, 2012) …………………………………....26

*Bern v. United Mercantile Agencies*, 942 F. Supp. 217, 219-20 (S.D.N.Y. 1996) ……………..19

*Brady v. Calyon Sec. (USA)*, 05 Civ. 3470,
          2007 WL 4440926, at *14 (S.D.N.Y. Dec. 17, 2007) …………………………………..19

*Caronia v. Hustedt Chevrolet*, No. CIVA 053526 DRH MLO,
          2009 WL 909729, at *6 (E.D.N.Y. Apr. 1, 2009) …………………………………...…18

*Carter v. Verizon*, No. 13 CIV 7579 KPF,
2015 WL 247344, at *4 (S.D.N.Y. Jan. 20, 2015) …………………………….....…..……………14

*Casalino v. N.Y.S. Catholic Health Plan, Inc.*, No. 09–CV–2583,
          2012 WL 1079943, at *8–9 (S.D.N.Y. Mar. 30, 2012)…………………………………26

*Castro v. N.Y. City Bd. of Educ.*, No. 96 cv 6314,
          1998 WL 108004, at *7 (S.D.N.Y. Mar. 12, 1998) …………………………………...17

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) ………………………………………..……13

*Chukwuka v. City of New York,* 795 F. Supp. 2d 256, 260 (S.D.N.Y. 2011) ………..…………..18

*Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2004) …………………………………24

*Danzer v. Norden Sys.*, 151 F.3d 50, 56 (2d Cir. 1998) …………………………...…………19

*Davis–Bell v. Columbia Univ.*,
          851 F. Supp. 2d 650, 671 (S.D.N.Y. Mar. 19, 2012) …………………………………26

*Deuel v. Town of Southampton*, No. 14-cv-2668-JMA,
2015 WL 4394085 at * 6 (E.D.N.Y. July 16, 2015) …………………………..…………..16

*Drummond v. IPC Int'l, Inc.*, 400 F. Supp. 2d 521, 532 (E.D.N.Y. 2005) …………..…….……20

*Emanuel v. Oliver, Wyman & Co.*, 85 F. Supp. 2d 321, 335 (S.D.N.Y. 2000) …….…………...19

*Ehrbar v. Forest Hills Hosp.*, 131 F. Supp. 3d 5, 21 (E.D.N.Y. 2015) ……………..……..……20

*Faldetta v. Lockheed Martin Corp.*, No. 98 CIV. 2614 (RCC),
2000 WL 1682759, at *10 (S.D.N.Y. Nov. 9, 2000) ……………………….……..…...20

*Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) …………..…..……...…25

*Galabya v. N.Y.C. Bd. Of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) ………………...…….……16

*Garcia v. N.Y.C. Admin. of Children's Servs.*, No. 03 Civ. 5271,
2007 WL 2822153, at *6 (S.D.N.Y. Sept. 27, 2007) ……………………..…….……17

*Gelin v. City of New York,* No. 10–CV–5592,
2013 WL 2298979, at *12–13 (E.D.N.Y. May 24, 2013) ………………….……………...26

*Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010) …………………….....14

*Hamilton v. Mount Sinai Hosp.*, 528 F. Supp. 2d 431, 447 (S.D.N.Y. 2007) ……..…….19, 21, 24

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) ……..23, 24

Joseph v. Owens & Minor Distribution, Inc., 5 F. Supp. 3d 295, 312 (E.D.N.Y. 2014)…...……21

*Katz v. Beth Israel Med. Ctr.*, No. 95 Civ. 7183,
2001 WL 11064, at *14 (S.D.N.Y. Jan. 4, 2001) …………………………….……....25

*Krachenfels v. N. Shore Long Island Jewish Health Sys.*, No. 13–CV–243,
2014 WL 3867560, at *15 (E.D.N.Y. July 29, 2014) …………………………..…….16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) …………..…..14

*Mazur v. N.Y.C. Dep't of Educ.*, 53 F. Supp. 3d 618, 638 (S.D.N.Y. 2014) …………..……25, 26

*Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67,
106 S. Ct. 2399, 91 L.Ed.2d 49 (1986) ……………………………………………24

*Mihalik v. Credit Agricole Cheuvreux North America, Inc.*,
15 F.3d 102, 111 (2d Cir. 2013) …………………………………………...………………26

*Moore v. Verizon*, No. 13 Civ. 6467, 2016 WL 825001, at *13 (S.D.N.Y. Feb. 5, 2016) ….25, 26

*Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) …………………………………..……….23

*Patrolmen's Benevolent Ass'n of City of New York v. City of New York*,
     310 F.3d 43, 51 (2d Cir. 2002) …………………………………………………………….16

*Petrosino v. Bell Atl.*, 385 F.3d 210, 229 (2d Cir. 2004) ………………….…..….…14, 15, 24

*Rogers v. Roosevelt Union Free Sch. Dist.*, No. 09–CV–3862,
     2012 WL 6163130, at *4 (E.D.N.Y. Dec. 7, 2012) …………………………….…….15

*Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) ……………….……………..……….22

*Scott v. Harris*, 550 U.S. 372, 377 (2007) ……………………………..……………………….3

*Stetson v. NYNEX Service Co.*, 995 F.2d 355, 361 (2d Cir. 1993) …………..………………15

*Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) ……………………………………..……..22

*Valentine v. Standard & Poor's*, 50 F. Supp. 2d 262, 284 (S.D.N.Y. 1999) …………….…17, 18

*Vandermark v. City of New York*, 615 F. Supp. 2d 196, 209 (S.D.N.Y. 2009) …………….…...24

*Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) …………..….…13

*Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 74 (2d Cir. 2000) …………………15

*Williams v. New York City Hous. Auth.*,
     61 A.D.3d 62, 79, 872 N.Y.S.2d 39–40 (1st Dep't 2009) ………………….………….…..27

*Wu v. Metro-N. Commuter R.R. Co.*, No. 14 Civ. 7015,
     2015 WL 5793971, at *17 (S.D.N.Y. Aug. 4, 2016) …………………….…………...…25

*Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 75 (2d Cir. 2015). ……..……………………20

## I.    **PRELIMINARY STATEMENT**

Anthem hired Plaintiff in 2008 as a Marketing Representative when she was 59 years of age, reporting to William Yang.  In 2010, after receiving four corrective actions for her failure to meet her production goals, Plaintiff was placed on a final corrective action.  Plaintiff admits that Mr. Yang could have terminated her employment at that time based on her deficient performance, however, he chose not to do so.  Instead, through his coaching, Plaintiff's performance improved to the point that she became Mr. Yang's "most successful turnaround story."  Plaintiff admits that Mr. Yang terminated the employment of an employee younger than her for similar performance reasons.  Despite these undisputed facts, Plaintiff now claims that Mr. Yang and her subsequent supervisor, Andrew Chooi, made several comments about her age or her plans to retire, which led to her constructive discharge on December 21, 2014.

Based on these allegations, Plaintiff asserts claims of age discrimination and harassment under the Age Discrimination in Employment Act ("ADEA") and New York State and City Human Rights Laws ("NYSHRL" and "NYCHRL").[1]  Plaintiff's age discrimination claim must be dismissed because she cannot establish a *prima facie* case of discrimination because she cannot show any adverse employment action or that her resignation occurred under circumstances giving rise to an inference of discrimination.  Plaintiff cannot meet her "demanding" burden to demonstrate that she was constructively discharged from her employment, as the "mean look" she received from her former supervisor during a meeting is far from sufficient to establish such a claim.  Moreover, many of Plaintiff's alleged discriminatory acts -- the denial of use of a table and chair or business cards in 2008, a temporary assignment to

---

[1] Pursuant to the Court's May 20, 2017 Order, Plaintiff has stipulated to the dismissal of the national origin discrimination claims in the Fourth, Fifth and Sixth Counts and hostile work environment due to national origin and the Seventh Count of the Complaint. (ECF No. 31.)

work in Anthem's Chinatown location (with other younger co-workers) or covering receptionist duties (along with several of her co-workers doing so) -- are not actually adverse employment actions because, as Plaintiff admits, they did not result in any tangible impact.

Even if Plaintiff could establish a *prima facie* case of discrimination, which she cannot, Anthem has articulated legitimate, non-discriminatory reasons for all actions taken towards Plaintiff, including temporarily assigning her to assist during a co-worker's vacation and also to rotate receptionist duties for a brief time when the Company had no receptionist and had changed to a customer service model. Plaintiff has wholly failed to prove that these reasons were pretext for intentional age discrimination.

Plaintiff's hostile work environment claim fares no better. The conduct alleged by Plaintiff, even if assumed to be true, is insufficient to justify a conclusion that she is entitled to a remedy based on an age-related hostile work environment. For example, Plaintiff's internal complaint in July 2014 for conduct that occurred six years earlier regarding the failure to provide her business cards in 2008 or a desk or a chair for her work location, or accusing her of stealing a colleague's work years later, contains no suggestion that this conduct was engaged in because of Plaintiff's age, let alone amounted to severe and pervasive conduct.  Indeed, Anthem investigated her report and found her concerns to be without merit.  Moreover, it is well settled that questions about an employee's planned retirement, without more, are insufficient to establish a hostile work environment claim as a matter of law.  Finally, Plaintiff cannot establish a hostile work environment claim under the NYCHRL because she cannot show she was treated less well than others, and no reasonable jury could conclude that questions about her planned retirement amounted to more than a "petty slight" or trivial inconvenience.

-2-

For these reasons, and as demonstrated below, the Court should grant Defendants' motion for summary judgment, dismissing Plaintiff's claims in their entirety.[2]

## STATEMENT OF UNDISPUTED MATERIAL FACTS[3]

### A.   ANTHEM AND ITS POLICIES

Defendant Anthem, Inc. provides healthcare benefits as an independent licensee of the Blue Cross and Blue Shield Association.   Until December 2014, Anthem was known as WellPoint, Inc.  (SOF ¶ 1.)  Defendant Amerigroup Corporation was acquired by WellPoint, Inc. in approximately December 2012.  (SOF ¶ 2.)  At all relevant times, Anthem and its predecessors maintained equal employment opportunity and affirmative action policies, including policies prohibiting workplace discrimination, retaliation, and harassment based on, among other things, an employee's age.  (SOF ¶ 3.)  Prior to being acquired by WellPoint, Inc., Amerigroup Corporation employees also received a copy of Amerigroup Corporation's Guidebook and Compliance Program upon hire.  (*Id.*)  Plaintiff acknowledged receipt of Amerigroup Corporation's 2007 Guidebook and Compliance Program, which contained express information about the Company's equal employment opportunity and affirmative action policies, including policies prohibiting workplace discrimination, retaliation, and harassment.  (SOF ¶ 4.)

At all relevant times, Anthem employees, including Plaintiff, could -- and were encouraged to -- access all Human Resources policies and procedures.  These policies and procedures included prohibitions on workplace discrimination, retaliation, and harassment.

---

[2] As Anthem, Inc. was Plaintiff's employer at the time of her resignation in December 2014, Plaintiff's claims against Amerigroup Corp. should be dismissed as a matter of law. *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997) (noting that "the district court retains some discretion to dismiss an action where there was no semblance of any reasonable basis for the naming of an incorrect party").

[3] As mandated by the United States Supreme Court, *see Scott v. Harris*, 550 U.S. 372, 377 (2007), Anthem presents the facts in the light most favorable to Plaintiff. But, Anthem presents these facts as undisputed only for the purposes of this motion and refers to the paragraphs and exhibits to Defendant's Statement of Undisputed Material Facts, hereinafter "SOF ¶ __."

Employees could access these policies either at work or at home through Anthem's online intranet site, WorkNet. (SOF ¶ 5.)

Plaintiff acknowledged receipt of Anthem's Sales & Marketing, Retention, Community Relations Departmental Guidelines, which encourages employees to access Human Resources policies and procedures through WorkNet. (SOF ¶ 6.) Plaintiff further admitted she was aware of Anthem's policies and procedures, and at all times during her employment, she knew she could make a complaint to the Company concerning alleged discrimination, harassment or retaliation through various reporting mechanisms, including to her manager, Human Resources, or Anthem's Compliance Hotline. (*Id.*)

**B.    PLAINTIFF'S HIRING AND EMPLOYMENT WITH ANTHEM**

In 2008, Alice Lee was Anthem's Marketing Director and William Yang was the lead Marketing Representative. (SOF ¶ 7.) Ms. Lee and Plaintiff are friends, as they previously met at the Taipei/Chinese Cultural Center. (*Id.*) Ms. Lee informed Plaintiff of an open position at Amerigroup and recommended her to come in for an interview. (*Id.*) Despite Plaintiff's lack of experience working with health insurance and benefits, Ms. Lee recommended that Amerigroup hire her due to the need for employees in Flushing, New York near where Plaintiff lived. (*Id.*) As such, Ms. Lee recommended that Amerigroup hire Plaintiff and Mr. Yang (then age 37) interviewed and made the decision to hire Plaintiff. (*Id.*)

On March 31, 2008, Plaintiff was hired by Anthem for the position of "Marketing Representative I" in Anthem's Sales and Marketing Department reporting to Mr. Yang. Plaintiff was born on May 30, 1948, and therefore, she was 59 years old at the time of her hire. (SOF ¶ 8.) Plaintiff admitted that she did not have any problems with Mr. Yang, stating "I respect him a lot" and she continued to hold him in high regard during her employment. (SOF ¶ 9.) Plaintiff

-4-

acknowledged her "employment at-will" status and that either she or Amerigroup could terminate her employment relationship at any time, for any reason, with or without cause. (SOF ¶ 10.)  Plaintiff further admitted that her at-will employment status was fair and that she understood that she could leave any time and the Company could terminate her employment as well. (*Id.*) Marketing Representatives (later known as Marketplace Facilitated Enrollment Representatives), including Plaintiff, are typically staffed out of satellite locations referred to as "customer service centers" ("CSC").  (SOF ¶ 11.)  As a Marketing Representative, Plaintiff was responsible for enrolling new members for health insurance, including meeting enrollment goals set by the Company. (*Id.*)

Between February 10, 2009 and December 2, 2010, Plaintiff received four Corrective Action forms for her failure to meet the minimum requirements of her job with regard to her production goals, and not "quotas" as incorrectly alleged in the Complaint. (SOF ¶ 12.) For example, Plaintiff's November 23, 2009 Corrective Action refers a minimum expectation of 40 enrollments in March 2009.  (*Id.*)  Plaintiff worked all that month, but submitted only 37.5 enrollments, and therefore, she was not meeting the minimum requirements of her job. (SOF ¶ 12.)   On December 2, 2010, after receiving her fourth Corrective Action for not meeting her goals, Plaintiff was placed on Final Warning and told that immediate and sustained improvement was required and that further violations will result in further corrective action, up to and including termination. (SOF ¶ 13.)  Plaintiff admitted that she was aware that Mr. Yang could have terminated her employment in December 2010, but he did not do so. (*Id.*)  Plaintiff further admitted her allegation in Paragraph 24 of the Complaint that she had never received any Corrective Actions is false. (*Id.*)

Plaintiff also admitted that if Marketing Representatives did not reach their goals, then their employment would be terminated and that between February 2009 and December 2010, she was aware that Mr. Yang had terminated the employment of a younger Marketing Representative, Ms. Lin, for her failure to meet her production goals. (SOF ¶ 14.)

On May 29, 2012, Mr. Yang gave Plaintiff her performance evaluation for 2011, with an overall rating of "B-Successful Performance" (below the highest possible rating of an "A-Exceptional Performance") noting that Plaintiff "worked very hard this year and she has the most successful turnaround story, she saved her[self] from Final C[orrective] A[ction]." (SOF ¶ 15.) Plaintiff agreed with Mr. Yang's comment and admitted that there was nothing discriminatory about her performance evaluation. (*Id.*)

Effective November 18, 2012, Plaintiff's title changed to Marketplace Facilitated Enrollment Representative I-NY ("MPFE") and she continued to report to Mr. Yang. (SOF ¶ 16.) Plaintiff and all other MPFEs were responsible for providing education on the Affordable Care Act and the Marketplace to potential members. (*Id.*) Plaintiff's primary duties included, but were not limited to, providing assistance to the community in understanding the marketplace and the insurance programs it offers; providing individuals and small businesses with assistance in completing their enrollment applications to receive health care coverage; educating potential members on the tools available to help narrow their plan options; and assisting members to compare and contrast the benefits and costs and quality ratings of different plans. (*Id.*) Plaintiff admits that, except for education on the Affordable Care Act, the nature of her work did not change in any way from her prior role. (*Id.*)

In 2013, Anthem opened a new CSC located at 136-52 39th Avenue, Flushing, NY 11354 (the "Flushing CSC") where Plaintiff was assigned to work. (SOF ¶ 17.) The majority of MPFEs

enrollments is based on walk-ins to high traffic CSCs.  (*Id.*)  In addition, Anthem required MPFEs to travel within the five boroughs based on business needs. (*Id.*)  In December, 2013, Mr. Yang was promoted to Director, and therefore, he was no longer Plaintiff's direct supervisor. Instead, Hung (Timmy) Yeo became Plaintiff's direct supervisor. (SOF ¶ 18.)

## C.    PLAINTIFF'S PLANNED RETIREMENT

In January 2014, Plaintiff, Mr. Yang and Mr. Yeo met to discuss Plaintiff's 2013 performance review.  (SOF ¶ 19.)  Plaintiff admitted that in her 2013 review, she had achieved only 72.63% of new business, which was short of her goal of 80% of new business. (*Id.*)

In April 2014, Anthem hired Andrew Chooi (then age 30) and he then became Plaintiff's supervisor. (SOF ¶ 20.)  During that time, Anthem had open positions in the Retention Department. (*Id.*)  As such, Mr. Chooi asked all of the MPFE's in his unit - regardless of age - if they were interested in applying for the openings, including Plaintiff.  (*Id.*)  During Plaintiff's mid-year review in July 2014 with Mr. Chooi and Mr. Yang, they, again, offered Plaintiff a position in the Retention Department since she performed well with Anthem's recertification products (though not with generating new business), but Plaintiff rejected the opportunity, stating that she is going to retire and did not want to transfer to the Retention Department.  (SOF ¶ 21.) Again, Plaintiff informed Mr. Chooi that she wanted to remain in her role with her current team until her retirement. (*Id.*)

On November 19, 2014, after Plaintiff returned from a short Paid Time Off ("PTO"), she requested a meeting with Mr. Chooi at the Flushing CSC to discuss her retirement.  (*Id.*) Plaintiff and Mr. Chooi met on November 25, 2014.  (SOF ¶ 22.)  During the meeting, Plaintiff asked Mr. Chooi if he could issue her a corrective action or let her go/fire her for low productivity, so she could apply for unemployment.  (*Id.*)  Plaintiff admitted that in the past she

had been issued a corrective action from her former manager for not meeting productivity. (*Id.*) Mr. Chooi responded that he would neither write her up nor fire her and notified Human Resources and Mr. Yang in an e-mail sent the day of his meeting with Plaintiff. (*Id.*) Mr. Yang also recalled that Plaintiff had mentioned a few times that she will retire in the coming December. (*Id.*)

**D.     PLAINTIFF'S JULY 2014 REPORT TO ANTHEM'S COMPLIANCE HOTLINE**

Plaintiff admitted that she was aware of Anthem's anti-discrimination policies, and that before July 2014, she never complained to anyone at Anthem that she believed anyone discriminated against her or treated her differently because of her age, or otherwise discriminated against her in any way. (SOF ¶ 23.)   Plaintiff further admitted that no one at Anthem discriminated against her or treated her differently because of her national origin, and admitted that her Complaint in this lawsuit is about "age.  Just age." (SOF ¶ 24.)

On July 14, 2014 and again on July 30, 2014, Plaintiff's son, Isaac Wei, submitted a Compliance Hotline complaint ("Hotline Complaint") on behalf of Plaintiff. (SOF ¶ 25.) Contrary to the allegations of the Complaint that Mr. Yang made comments about Plaintiff's age on a daily basis beginning in June 2011, Plaintiff's Hotline Complaint concerned only four issues that: (a) Mr. Yang made comments about her age, questioned her eyesight and her overall health, and implied that she was physically unfit to perform her job and should quit; (b) on July 10, 2014, during her mid-year review, Mr. Yang had allegedly accused her of stealing another colleague's work, asked about her retirement and told her she would be transferred to the Retention Department in front of her new manager, Mr. Chooi; (c) Plaintiff was assigned to sites that are unprofessional and without adequate equipment such as a table and chair; and (d)

Plaintiff had to create her own business cards when she first started in 2008 and alleged that Mr. Yang denied her the business cards.  (SOF ¶ 26.)

Human Resources Business Partner, Maritza Villa de Gutierrez promptly investigated Plaintiff's report, including meeting with Plaintiff, and, after completing her investigation, Ms. Villa de Gutierrez concluded that there was no evidence to support Plaintiff's allegations. (SOF ¶ 27.)  First, Ms. Villa de Gutierrez interviewed the persons who were in the car when Mr. Yang allegedly made age-related comments to Plaintiff, but there is no evidence that Mr. Yang actually stated that Plaintiff should retire. (*Id.*) Moreover, Plaintiff admitted in her deposition that Mr. Yang did not tell her that her eyes were not well and that she had requested time off for Lasik eye surgery in 2009. (*Id.*)  In addition, contrary to the allegations of the Complaint, Plaintiff further admitted in her deposition that Mr. Yang did not make alleged comments about her age on a daily basis since June 2011, and instead made them only "[o]n occasion." (*Id.*)

Second, Ms. Villa de Gutierrez interviewed Mr. Yang and Mr. Chooi concerning their July 10, 2014 meeting with Plaintiff, but could not confirm Plaintiff's allegation that she was accused of stealing another colleague's work.  (SOF ¶ 28.)  Although Mr. Chooi admitted that he asked Plaintiff about her retirement after she raised the issue, he denied that Mr. Yang stated to everyone that she would be retiring by the end of the year.  (*Id.*)  Based on Mr. Chooi's question to Plaintiff about her retirement in response to Plaintiff raising the subject, Human Resources provided a coaching session to Mr. Chooi and Mr. Yang. (*Id.*)

Third, Ms. Villa de Guiterez interviewed Mr. Yang concerning Plaintiff's assigned worksites and was unable to confirm that Plaintiff was not provided adequate equipment.  (SOF ¶ 29.)  Specifically, Mr. Yang stated that Plaintiff did not request a table or chair and was not informed by her that she purchased those items.   (*Id.*) Indeed, Plaintiff admitted that she

purchased a chair on her own, and did not tell anyone at Anthem that she did so or request reimbursement for it. (*Id.*)

Finally, Ms. Villa de Guiterrez did not locate evidence to support Plaintiff's allegation that Mr. Yang denied her business cards six years earlier in March 2008 when her employment began.   (SOF ¶ 30.)   Indeed, Ms. Villa de Gutierrez interviewed Sal Abramov who was responsible for ordering business cards and who reported that business cards are not immediately issued when an associate starts work. (*Id.*)   Further, Mr. Abramov indicated that he did order business cards for Plaintiff. (*Id.*)   Ms. Villa de Gutierrez further interviewed Ms. Lee, who was unaware of any issues regarding business cards, as she would not usually get involved at that level and she denied that Plaintiff reported any such issues to her.  (*Id.*)

Moreover, Plaintiff admits that the Company ultimately provided her business cards within months after her employment began, and more importantly, there was nothing that the Company could do when she failed to report her concerns to anyone for more than six years. (SOF ¶ 31.)  Plaintiff further admitted that she was satisfied with the results of the Company's investigation as of August 2014. (SOF ¶ 32.)  Moreover, Plaintiff further admitted that she was aware that she could complain if she experienced any further problems, and that she did not make any further complaints to the company about the issues she raised to the Compliance Hotline. (*Id.*)

**E.    PLAINTIFF'S AND OTHER MPFE'S TEMPORARY ASSIGNMENTS TO THE CHINATOWN CSC AND COVERING RECEPTIONIST DUTIES**

On August 19, 2014, due to a staffing shortage as a result of the vacation of MPFE Han Thein (age 60), Mr. Chooi wrote an e-mail to Plaintiff confirming their discussion that Plaintiff would be temporarily assigned to the Chinatown CSC effective August 20, 2014.   (SOF ¶ 33.) Plaintiff further admitted that other MPFEs were temporarily assigned to the Chinatown CSC.

(*Id.*)  Specifically, those MPFEs temporarily assigned to work at the Chinatown CSC included Xiang (Jessica) Chen (age 44), Nathan Nip (age 36), Han Thein, and XiuPing (Ada) Yang (age 36).  (SOF ¶ 34.)  None of the MPFEs temporarily assigned to the Chinatown CSC had their production goals changed as a result of the temporary assignment. (*Id.*)  In addition, all MPFEs had the same opportunity for new enrollments based on the high traffic walk-ins to the CSC during the temporary assignment. (*Id.*)  Moreover, contrary to the allegations of the Complaint, Plaintiff did not "lose all her current clients" because of the temporary assignment as she continued to perform in the area of retention of enrollments. (*Id.*)

Plaintiff admits that her temporary assignment was for a total of six days within a two-week time period between August 19, 2014 and September 2, 2014.  (SOF ¶ 35.)  Plaintiff also admits that her job title, salary and responsibilities were not impacted by the temporary assignment.  (*Id.*)  While Plaintiff contacted Ms. Villa de Guiterrez to complain about the temporary assignment, Plaintiff understood it was temporary, and stated, "so I was okay." (SOF ¶ 36.) Moreover, Ms. Villa de Gutierrez explained to Plaintiff that her assignment was temporary and that she was not being transferred and that she still reported to Mr. Chooi. (*Id.*)

Contrary to Plaintiff's allegation in the Complaint, her job was not changed to a receptionist. (SOF ¶ 37.)  Instead, Plaintiff's role was the same as every other MPFE, which was to provide quality service to Anthem members or prospects. (*Id.*)  They would greet Anthem's member/prospect and inquire on the reason for the CSC visit.  (*Id.*)  The MPFE would then ask questions and triage accordingly.  (*Id.*)  As such, Plaintiff performed this MPFE function from mid-October 2014 until December 2014.   Moreover, Plaintiff admits that her job title was not changed to receptionist. (*Id.*)

F.   <u>PLAINTIFF'S VOLUNTARY RESIGNATION FROM HER EMPLOYMENT</u>

Plaintiff admits that she did not complain to anyone at the Company concerning any alleged discrimination, or otherwise experienced any further problems after her August 19, 2014 complaint to Ms. Villa de Guiterez concerning her temporary assignment to the Chinatown CSC. (SOF ¶ 38.)  In her Complaint, Plaintiff alleges that on November 21, 2014, Mr. Chooi unjustly criticized her overall performance and she responded by stating that she was "being constructively discharged." (SOF ¶ 39.)  Plaintiff, however, admits she continued to work for an additional month until December 23, 2014. (*Id.*)  Specifically, on December 22 and 23, 2014, Plaintiff sent an e-mail and letter to Human Resources Manager, Maria Munoz submitting her resignation effective December 21, 2014 due to "constructive discharge."  (SOF ¶ 40.)  Plaintiff then sent another email requesting that she be allowed to take PTO starting December 24, 2014 and her last day of employment would be December 31, 2014.   (*Id.*)  The basis for Plaintiff's request was to push out her termination date so that she would be eligible to receive her 2014 Annual Incentive Plan bonus ("AIP"), which required her to be an active employee on December 31, 2014 for her to be eligible to receive a bonus payout. (*Id.*) Anthem honored her request.  (*Id.*)

While Plaintiff's correspondence to Ms. Munoz at this time referred to a "constructive discharge," Plaintiff did not provide any facts concerning why she felt compelled to resign. (*Id.*)  Instead, during her deposition, Plaintiff admitted that the only event that occurred before she resigned was that Mr. Yang, on a single occasion, gave her a "mean look" during a meeting on December 19, 2014. (SOF ¶ 41.)   Plaintiff further admits that after this meeting, no one forced her out, and that she continued to work in the office after the December 19, 2014 meeting, and continued to work after she submitted her resignation letter. (*Id.*)  In fact, in her sworn EEOC

Intake Questionnaire, Plaintiff stated that the reason for the end of her employment with Anthem

was "planned resignation EOY" (End Of Year), not a "constructive discharge."  (SOF ¶ 42).

## ARGUMENT

### A.     THE APPLICABLE SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment where, as here, the pleadings, depositions,

affidavits, and other discovery establish that there is no genuine issue as to any material fact and

the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Summary judgment provides a procedure whereby

determinations can be made without recourse to a costly, lengthy, and unnecessary trial:

> [s]ummary judgment procedure is properly regarded not as a disfavored
> procedural shortcut, but rather as an integral part of the Federal Rules as a whole,
> which are designed 'to secure the just, speedy and inexpensive determination of
> every action.'

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

To carry its initial burden, the moving party must show that "there is an absence of

evidence to support the nonmoving party's case." *See Id.* at 325. A moving party need only show

the absence of proof of any of the essential elements of the non-movant's case. *Id.* at 323. Once a

properly supported motion for summary judgment has been made, the burden shifts to the

nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *See*

*Liberty Lobby, Inc.*, 477 U.S. at 248 (citing Fed. R. Civ. P. 56(e)). Thus, to withstand this motion

as to Plaintiff's claims of age discrimination and hostile work environment, she must do more

than present evidence that is merely colorable, conclusory or speculative; she must present

"concrete evidence from which a reasonable [fact-finder] could return a verdict in his favor."

*Liberty Lobby, Inc.*, 477 U.S. at 256; *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121

(2d Cir. 1990) (nonmoving party "cannot 'escape summary judgment merely by vaguely asserting

the existence of some unspecified disputed material facts,' or defeat the motion through 'mere speculation or conjecture.'") (internal citations omitted). In sum, Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Applying this standard to the undisputed material facts in this case, it is clear that Defendants are entitled to summary judgment on each of Plaintiff's claims.

**B.     PLAINTIFF'S AGE DISCRIMINATION CLAIMS SHOULD BE DISMISSED**

**1.   Plaintiff Has Failed to Establish a Prima *Facie Case* of Age Discrimination**

To establish a prima facie case of age discrimination under the ADEA and NYSHRL, a plaintiff must show that (1) "she was within the protected age group," (2) "she was qualified for the position," (3) "she experienced adverse employment action," and (4) "such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010).[4]  Plaintiff cannot establish two of these four essential elements.

**a)     Plaintiff Cannot Meet Her "Demanding" Burden to Establish A Constructive Discharge**

As an initial matter, Plaintiff cannot establish that she was subjected to an adverse employment action because she voluntarily resigned from her employment and cannot meet her "demanding" burden to establish constructive discharge.  To do so, Plaintiff must show that: (1) the employer acted deliberately or intentionally in bringing about the complained of work conditions, and (2) the conditions were "intolerable." *Petrosino v. Bell Atl.*, 385 F.3d 210, 229

---

[4] *Carter v. Verizon*, No. 13 CIV. 7579 KPF, 2015 WL 247344, at *4 (S.D.N.Y. Jan. 20, 2015) (same standard under NYSHRL; NYCHRL looks at whether plaintiff was treated "less well" due to status in protected class).

(2d Cir. 2004); *see also Rogers v. Roosevelt Union Free Sch. Dist.*, No. 09–CV–3862, 2012 WL 6163130, at *4 (E.D.N.Y. Dec. 7, 2012) (using the *Petrosino* two-part analysis), aff'd, 553 Fed. App'x 88 (2d Cir. 2014). In order to meet the first requirement, the plaintiff must, at a minimum, show that the employer acted deliberately in bringing about the intolerable work conditions. *Petrosino*, 385 F.3d at 229–30; *see also Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 74 (2d Cir. 2000) ("[S]omething beyond mere negligence or ineffectiveness is required."). Second, to show whether the work conditions were "so intolerable as to compel resignation," the conditions must be "assessed objectively by reference to a reasonable person in the employee's position." *Petrosino*, 385 F.3d at 230; *Stetson v. NYNEX Service Co.*, 995 F.2d 355, 361 (2d Cir. 1993) ("[A] claim of constructive discharge must be dismissed as a matter of law unless the evidence is sufficient to permit a rational trier of fact to infer that the employer deliberately created working conditions that were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.").

Here, with regard to the first element, the record is devoid of any evidence that Anthem acted deliberately or intentionally in bringing about Plaintiff's resignation. To the contrary, the evidence establishes that Plaintiff had <u>planned</u> to retire based on her admission to the EEOC in her intake questionnaire that the reason for the end of her employment with Anthem was "planned resignation EOY" (End Of Year).  (SOF ¶ 42).  Second, there is no evidence that Plaintiff's working conditions were "intolerable," as Plaintiff points to only one incident in the months leading up to her resignation,[5] where Mr. Yang, who was not her direct supervisor at the time, gave her a "mean look" during a meeting on December 19, 2014. (SOF ¶ 41.)  Courts have

---

[5] Plaintiff's complaints concerning the failure to provide her business cards in 2008 or a table and chair at her work location are far too removed in time to her resignation more than six years later in December 2014. Plaintiff admits that the Company investigated her complaints to those allegations and resolved them to her satisfaction, and she further admits she did not raise any further complaints to the Company.

dismissed constructive discharge claims under conditions far worse than those alleged by Plaintiff. *See, e.g.*, *Deuel v. Town of Southampton*, No. 14-cv-2668-JMA, 2015 WL 4394085 at * 6 (E.D.N.Y. July 16, 2015) (holding no constructive discharge where plaintiff's supervisor and co-worker yelled at her where she alleged that a machete was placed in a location in a shed where it would fall on plaintiff); *Krachenfels v. N. Shore Long Island Jewish Health Sys.*, No. 13–CV–243, 2014 WL 3867560, at *15 (E.D.N.Y. July 29, 2014) ("[A]n employee is not constructively discharged because she does not like her assignments, receives unfair criticism, or is yelled at by supervisors."). There are simply no facts to support constructive discharge in this case, and, thus, the Court should reject Plaintiff's claim.

b)    <u>Plaintiff Cannot Establish that Most, if Not All, Of The Alleged Discriminatory Acts Constituted Adverse Employment Actions.</u>

In addition to Plaintiff's inability to establish constructive discharge, the overwhelming majority of Plaintiff's alleged discriminatory acts simply do not constitute adverse employment actions. An adverse employment action violates the ADEA and NYSHRL if there is a "materially adverse" change in working conditions. *Patrolmen's Benevolent Ass'n of City of New York v. City of New York*, 310 F.3d 43, 51 (2d Cir. 2002); *Alywahby v. Shinseki*, No. 01-CV-6512 (NGG)(LB), 2009 WL 5166271, at *4 (E.D.N.Y. Dec. 29, 2009). A materially adverse change can include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation," and "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya v. N.Y.C. Bd. Of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000).

Most, if not all, of Plaintiff's allegations of misconduct do not constitute adverse employment actions. First, issuing Plaintiff a corrective action for failing to meet her established

production goals and questioning her about her sales goals are not adverse actions because, by Plaintiff's own admission, neither resulted in any discipline or other tangible impact on Plaintiff. *Castro v. N.Y. City Bd. of Educ.*, No. 96 cv 6314, 1998 WL 108004, at *7 (S.D.N.Y. Mar. 12, 1998) (written reprimand that was not attended by demotion or tangible loss did not materially alter plaintiff's employment conditions). Likewise, any issues Plaintiff had with her year-end self-evaluations are insufficient to establish a materially adverse action because Mr. Yang's assessment in May 2012 that she had the most successful turn-around story in history was not a negative evaluation and, regardless, there is no evidence in the record that Plaintiff's year-end evaluation in 2014 where she had achieved only 72.63% of new business, which was short of her goal of 80% of new business, resulted in adverse consequences that impacted her employment. *See Garcia v. N.Y.C. Admin. of Children's Servs.*, No. 03 Civ. 5271, 2007 WL 2822153, at *6 (S.D.N.Y. Sept. 27, 2007) ("[T]he evaluations were unattended by a demotion or tangible loss, and therefore did not materially alter plaintiff's employment conditions"); *Valentine v. Standard & Poor's*, 50 F. Supp. 2d 262, 284 (S.D.N.Y. 1999) ("Given that plaintiff's negative reviews did not lead to any immediate tangible harm or consequences, they do not constitute adverse actions materially altering the conditions of his employment").

Moreover, temporarily assigning Plaintiff to the Chinatown CSC (along with several other MPFEs) and rotating assignments for Plaintiff and all other MPFEs to temporarily cover the reception desk in the Flushing CSC are not adverse actions because neither resulted in materially adverse changes to Plaintiff's terms or conditions of employment, nor were they limited to only affecting Plaintiff.[6] *See Castro*, 1998 WL 108004, at *7 (no material adverse

---

[6] While Plaintiff's Complaint does not allege a separate count for retaliation, to the extent Plaintiff claims that the temporary assignment to the Chinatown CSC or covering receptionist duties were in retaliation for her July 2014 complaint to the compliance hotline, Plaintiff concedes there was no tangible employment action as a result of these temporary assignments. Moreover, although Plaintiff had used Anthem's compliance hotline in July 2014, she

change where supervisor's "decision to assign plaintiff to teach second grade and to place students with special needs in her class neither deprived plaintiff of an opportunity nor caused her to suffer any attendant negative result such as demotion, suspension or loss of wages"). Finally, Plaintiff's additional allegations – changing her work schedule, temporarily increasing her work commute, and failing to provide her a table or chair or business cards in 2008 -- six years before her resignation -- fall fatally short of the materially adverse standard as "[e]veryday workplace grievances, disappointments, and setbacks do not constitute adverse employment actions." *Chukwuka v. City of New York*, 795 F. Supp. 2d 256, 260 (S.D.N.Y. 2011) *aff'd*, 513 F. App'x 34 (2d Cir. 2013) *Valentine*, 50 F. Supp. 2d at 284 (internal quotations omitted) ("not everything that makes an employee unhappy is an actionable adverse action").

c)    <u>Any Alleged Discriminatory Comments Do Not Create an Inference of Discrimination</u>

Plaintiff identified sporadic alleged comments that she claims Mr. Yang made about her eyesight, her health and her planned retirement, but has failed to show that they are at all connected to any alleged adverse action, including her December 21, 2014 voluntary resignation. (*See* Compl. ¶¶ 29, 33, 34, 35, 37, 39.) The comments – that Plaintiff was "too old, your eyes are not well" and that Plaintiff was "so old, you are not good, when are you going to retire" – were allegedly made by Mr. Yang to Plaintiff more than six months before her planned retirement – a gap that does not create an inference of discrimination. *Caronia v. Hustedt Chevrolet*, No. CIVA 053526 DRH MLO, 2009 WL 909729, at *6 (E.D.N.Y. Apr. 1, 2009) (granting summary judgment on age discrimination claim because no inference of discrimination exists where

---

admits she did not make any further complaints, and thus, her voluntary resignation in December 2014 has no nexus to any conduct that occurred five months earlier.

comments were not "made anywhere near the time of the adverse action"); *Emanuel v. Oliver, Wyman & Co.,* 85 F. Supp. 2d 321, 335 (S.D.N.Y. 2000) (same).

In *Brady v. Calyon Securities (USA)*, several stray comments – i.e., "the old man with all the wisdom," "the old man that is so knowledgeable in research" and "[t]ake a lesson, old man" – were insufficient to support a claim of age discrimination. *See Brady v. Calyon Sec. (USA)*, 05 Civ. 3470, 2007 WL 4440926, at *14 (S.D.N.Y. Dec. 17, 2007). The Court noted that these "isolated remarks alone are not enough to support a discrimination claim, especially where such comments are not even facially malicious or derogatory, but more likely just benign off-hand remarks that had little or nothing to do with plaintiff's actual age and where 'old man' was probably only being used in the colloquial sense." *Id.* Here, Mr. Yang's alleged remarks can hardly be seen as related to Plaintiff's age (as the comment regarding her eyesight related to her request for time off due to eye surgery and the comment alleged in Paragraph 34 of the Complaint regarding retirement occurred while discussing the retirement of a co-worker at a Company picnic) and, thus, these allegations cannot support a claim of age discrimination. *See Danzer v. Norden Sys.*, 151 F.3d 50, 56 (2d Cir. 1998) ("stray remarks" without "other indicia of discrimination" insufficient to establish a *prima facie* case); *see also*, *Bern v. United Mercantile Agencies*, 942 F. Supp. 217, 219-20 (S.D.N.Y. 1996) ("stray remarks in the workplace, by themselves, and without a demonstrated nexus to the complained of personnel actions will not defeat the employer's summary judgment motions"). Like in *Brady*, assuming for the purposes of this motion that the comments were true (which Mr. Yang denies), the appear to have been made in being used in the colloquial sense as discussing Plaintiff's planned retirement, and thus, are insufficient to support an age discrimination claim. *Hamilton v. Mount Sinai Hosp.*, 528 F. Supp. 2d 431, 447 (S.D.N.Y. 2007), aff'd, 331 F. App'x 874 (2d Cir. 2009) ("[D]iscussion of

-19-

retirement is common in offices, even between supervisors and employees, and is typically unrelated to age discrimination.").

           d)      <u>Plaintiff Fails to Identify a Younger Similarly Situated Individual Who Was Treated More Favorably.</u>

Plaintiff also has not identified a sufficient similarly situated and younger individual to buttress her discrimination claims or to show that she was treated "less well" due to her age under the NYCHRL. Plaintiff must demonstrate that she and the comparator are similarly situated in all material respects, which includes an analysis of "whether the plaintiff and potential comparator were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." *Ehrbar v. Forest Hills Hosp.*, 131 F. Supp. 3d 5, 21 (E.D.N.Y. 2015); *See also Drummond v. IPC Int'l, Inc.*, 400 F. Supp. 2d 521, 532 (E.D.N.Y. 2005) (internal quotations omitted). Even under the more lenient standard applicable in cases under the NYCHRL, in order to survive summary judgment, Plaintiff must demonstrate that she was (i) treated "less well" than others in a way that was more than trivial, insignificant, or petty, (ii) at least, in part, for discriminatory reasons. *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 75 (2d Cir. 2015).

Here, while the Complaint is devoid of any allegations that the Plaintiff was treated less well than any other employee, in her deposition, Plaintiff identified XiuPing (Ada) Yang (age 36), as a potential comparator who she claims Mr. Yang treated more favorably. (*See* SOF ¶ 34.) However, none of the MPFEs temporarily assigned to the Chinatown CSC had their production goals changed as a result of the temporary assignment, including Ada Yang. (*Id.*) In addition, all MPFEs had the same opportunity for new enrollments based on the high traffic walk-ins to the CSC during the temporary assignment. (*Id.*) Moreover, contrary to the allegations of the Complaint, Plaintiff did not lose her clients because of the temporary assignment as she continued to perform in the area of retention of enrollments. (*Id.*) *see Faldetta v. Lockheed*

*Martin Corp.*, No. 98 CIV. 2614 (RCC), 2000 WL 1682759, at *10 (S.D.N.Y. Nov. 9, 2000) (plaintiff's "attempt to compare himself to employees with different functions and titles is misplaced, because these employees were not similarly situated"). Furthermore, it is noteworthy that Plaintiff has not established that she and Ada Yang are "similarly situated in terms of performance, evaluation or discipline standards, or that they engaged in comparable conduct." *See Joseph v. Owens & Minor Distribution, Inc.*, 5 F. Supp. 3d 295, 312 (E.D.N.Y. 2014), *aff'd sub nom. Joseph v. Owens & Minor Distribution, Inc.*, 594 F. App'x 29 (2d Cir. 2015) (finding that plaintiff did not establish prima facie case of age discrimination where plaintiff "asserts only that the two comparators shared the same job title as him" and thus failed to demonstrate that he and the alleged comparators were similarly situated).

Moreover, Plaintiff admitted that she was aware that Mr. Yang could have terminated her employment in December 2010, but he did not do so, and that between February 2009 and December 2010, she was aware that Mr. Yang had terminated the employment of a younger Marketing Representative, Ms. Lin (who Plaintiff concedes was younger than her), for her failure to meet her production goals. (SOF ¶¶ 13-14.) These undisputed facts wholly undermine any inference of age discrimination. *See Hamilton v. Mount Sinai Hosp.*, 528 F. Supp. 2d at 448 (no inference of age discrimination where younger employees terminated for violating company policy).

## 2. Anthem's Legitimate, Non-Discriminatory Business Reasons For Its Actions and Plaintiff's Failure to Offer Any Evidence of Pretext.

Even if Plaintiff could establish a *prima facie* case of age discrimination, which she cannot, Anthem has legitimate, non-discriminatory business reasons for its decisions, and Plaintiff has utterly failed to set forth evidence that these reasons were pretext for discrimination.

"[O]nce a plaintiff has established a prima facie case, the burden shifts to the defendant, which is required to offer a legitimate, non-discriminatory rationale for its actions." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (*citing Schnabel v. Abramson,* 232 F.3d 83, 87 (2d Cir. 2000).  Upon establishing the legitimate non-discriminatory reasons, "to defeat summary judgment ... the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Terry*, 336 F.3d at 138 (internal quotations omitted); *Anderson*, 93 F. Supp. 3d at 140.

Here, Defendants have set forth legitimate nondiscriminatory business reasons for each of Plaintiff's alleged discriminatory acts. Most significantly, Plaintiff admits that Mr. Yang could have terminated her employment after she received four Corrective Actions and after she was placed on Final Warning (in which she was told that immediate and sustained improvement was required and that further violations will result in further corrective action, up to and including termination). (SOF ¶ 13.)  Plaintiff admits that Mr. Yang could have terminated her employment at that time, but he did not do so.  (SOF ¶ 14.)

As discussed above, Anthem took no adverse action towards Plaintiff, and instead, offered her a position in the Retention Department since she performed well with Anthem's recertification products.  Rather than accepting the proposal, Plaintiff voluntarily resigned from her employment in December 2014, consistent with her admission to the EEOC that it was due to a planned retirement EOY (End of Year).  Plaintiff has no evidence that Anthem's legitimate business reasons concerning her employment were pretextual, [7] and therefore, Plaintiff's discrimination claim fails.

---

[7] Plaintiff refers to conduct of Mr. Yang where he allegedly threatened Plaintiff and her family, which she claims she learned of more than 18 months after her employment ended. (SOF ¶¶ 41-44.)  The alleged comment by Mr.

## C.   PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM DUE TO HER AGE SHOULD BE DISMISSED[8]

Plaintiff's hostile work environment claims due to her age fare no better than her age discrimination claims.  To establish a hostile work environment claim under the ADEA or NYSHRL[9] due to her age, Plaintiff must "show that the complained of conduct: (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [age]." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007); *see also, e.g., Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002). In determining whether the conduct was sufficiently severe or pervasive, courts look at "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted." *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 82 (2d Cir. 2009) (internal citations and quotations omitted).  Moreover, to constitute a hostile work environment, "incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed

---

Yang, which he denies, does not create an issue for trial, because Alice Lee, the Anthem manager who informed Plaintiff of the alleged statement, admits that she never reported the alleged conduct to Anthem.  Further, Ms. Lee testified that she believed that Mr. Yang was "stressed" at the time and that she "forgave" him after making the alleged comment. (*Id.* ¶47.)  Moreover, Plaintiff admitted that she waited nearly two months from the time Ms. Lee told her on June 3, 2016 about an alleged threat from Mr. Yang until she made the report to the police on July 31, 2016, and therefore, there was no imminent threat of harm to her or her family. (*Id.*)   Indeed, the statement Plaintiff made to the police is false, as Ms. Lee testified that Mr. Yang did not send her to deliver a message to Plaintiff. (SOF ¶ 48.)  As such, none of the alleged conduct after Plaintiff's resignation establishes any discriminatory animus.

[8] Pursuant to the Court's May 20, 2017 Order, Plaintiff's hostile work environment due to her national origin is dismissed, and therefore, Anthem analyzes this claim only in the context of Plaintiff's age. (ECF No. 31.)

[9] Hostile work environment claims under the NYSHRL are analyzed under the same standards as similar claims under federal law. *See, e.g., Patane*, 508 F.3d at 115 (treating hostile work environment claims under state law using the federal standard).

pervasive." *Alfano*, 294 F.3d at 374 (internal citations and quotations omitted). "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Id.*; *see Petrosino v. Bell Atlantic*, 385 F.3d at 224 ("isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment").

The conduct alleged by Plaintiff, even if assumed to be true, is insufficient to justify a conclusion that Plaintiff is entitled to a remedy based on an age-related hostile work environment. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2004) ("Isolated instances of harassment ordinarily do not rise to th[e] level [of hostile work environment].") For example, Plaintiff's complaint in July 2014 about conduct that occurred six years earlier regarding the failure to provide her business cards in 2008 or a desk or a chair for her work location, or accusing her of stealing a colleague's work in 2014, contain no suggestion that this conduct occurred because of Plaintiff's age, let alone that the "workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [her] employment." *Harris*, 510 U.S. at 21, 114 S.Ct. 367. *See also Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S. Ct. 2399, 91 L.Ed.2d 49 (1986) ("not all workplace conduct that may be described as harassment affects ... employment within the meaning of Title VII."); *Vandermark v. City of New York*, 615 F. Supp. 2d 196, 209 (S.D.N.Y. 2009) (Title VII claims are predicated on discrimination because of protected category; mere allegations of hostility by themselves are insufficient to support hostile work environment claim). As such, Plaintiff's hostile work environment claim on these three incidents fails as a matter of law.

While Plaintiff claims that that other several incidents suggest discrimination due to her age, they are also insufficient to establish a hostile work environment claim. For example,

Plaintiff alleges that Mr. Yang and Mr. Chooi asked her about her retirement, which alone, is insufficient to establish her claim. *See, e.g., Mazur v. N.Y.C. Dep't of Educ.*, 53 F. Supp. 3d 618, 638 (S.D.N.Y. 2014) (holding "comments or questions about retirement, without more, do not create a hostile work environment."); *Hamilton*, 528 F. Supp. 2d 447 ("[D]iscussion of retirement is common in offices, even between supervisors and employees, and is typically unrelated to age discrimination.").

Moreover, while Plaintiff alleges that she was asked about her retirement, that Mr. Yang made comments about her eyes and her health and that he threatened to transfer her to the Brooklyn office if she did not retire (Compl. ¶¶ 29-36), there is no evidence that Mr. Yang created an environment that was difficult for employees based on their age, or based on these isolated, non-threatening comments and courts have dismissed hostile work environment claims alleging far worse conduct than asserted here. *Katz v. Beth Israel Med. Ctr.*, No. 95 Civ. 7183, 2001 WL 11064, at *14 (S.D.N.Y. Jan. 4, 2001) ("Being yelled at, receiving unfair criticism, receiving unfavorable schedules or work assignments, and being told to retire or work part time if she did not like the schedule also do not rise to the level of adverse employment actions; they do not affect any ultimate employment decisions."); *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (allegations that "defendants wrongly excluded [the plaintiff] from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her" were insufficient to show pervasive and severe conduct to support hostile work environment claim); *Moore v. Verizon*, No. 13 Civ. 6467, 2016 WL 825001, at *13 (S.D.N.Y. Feb. 5, 2016) (allegations that supervisor "persistently questioned [plaintiff] about retiring" were insufficient to support hostile work environment claim); *Wu v. Metro-N. Commuter R.R. Co.*, No. 14 Civ. 7015,

-25-

2015 WL 5793971, at \*17 (S.D.N.Y. Aug. 4, 2016) ("[C]omments or questions about retirement, without more, do not create a hostile work environment." (quoting *Mazur*, 53 F. Supp. 3d 618, 635 (S.D.N.Y. 2014)).

Even under the broader provisions of the NYCHRL, the lack of evidence regarding any discriminatory animus due to Plaintiff's age is fatal to her NYCHRL hostile work environment claim. *See, e.g., Moore*, 2015 WL 825001, at \*14 (finding "persistent" questioning about plaintiff's retirement plans and only two comments about plaintiff's age insufficient to state a hostile work environment claim under the NYCHRL); *see also Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 111 (2d Cir. 2013) (explaining that an employer may prevail on summary judgment on a plaintiff's NYCHRL hostile work environment claim "if it shows that a reasonable jury could conclude only that the conduct amounted to no more than a petty slight" or trivial inconvenience); *Barounis v. New York City Police Dep't*, No. 10–CV–2631, 2012 WL 6194190, at \*9 (S.D.N.Y. Dec. 12, 2012) ("The NYCHRL ... is not a general civility code and petty slights and trivial inconveniences are not actionable under it." (footnotes and internal quotation marks omitted)). Plaintiff has failed to raise a genuine issue of fact as to whether she was discriminated against due to her age, and therefore, cannot establish a hostile work environment claim under the NYCHRL. *See Gelin v. City of New York*, No. 10–CV–5592, 2013 WL 2298979, at \*12–13 (E.D.N.Y. May 24, 2013) (finding that plaintiff's NYCHRL hostile work environment claim failed because she did not offer "any evidence establishing that she was treated less well because of her ... gender"); *Davis–Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 671 (S.D.N.Y. Mar. 19, 2012) (finding that the plaintiff failed to raise a triable issue of fact as to whether the plaintiff "ha[d] been treated less well than other employees because of her gender" under the NYCHRL); *Casalino v. N.Y.S. Catholic Health Plan, Inc.*, No. 09–CV–2583,

2012 WL 1079943, at *8–9 (S.D.N.Y. Mar. 30, 2012) ("A NYCHRL hostile work environment claim requires that Plaintiff prove ... that she has been treated less well than other employees because of her gender.") (internal quotations omitted) (quoting *Williams New York City Hous. Auth.,* 61 A.D.3d 62, 79, 872 N.Y.S.2d, 872 N.Y.S.2d 39 (1st Dep't 2009)).

There is also no evidence that Plaintiff was treated less favorably than others because of her age. Indeed, Plaintiff admits that several MPFEs were temporarily assigned to work at the Chinatown CSC location, and that all employees rotated to cover the receptionist duties in Flushing, regardless of age. Moreover, Plaintiff admits that Mr. Yang could have terminated her employment in 2010 for her failure to meet her production goals, but he did not, and that he terminated the employment of a younger employee, Ms. Lin, for her failure to meet her production goals.

For all the above reasons, Plaintiff's hostile work environment claims due to her age fail as a matter of law and Defendants are entitled to summary judgment.

## <u>CONCLUSION</u>

Based on the foregoing, Defendants respectfully request that the Court grant summary judgment on Plaintiff's claims in their entirety, and with prejudice.

Dated: New York, New York
   August 4, 2017

             SEYFARTH SHAW LLP

             */s/ Howard M. Wexler*
             Howard M. Wexler
             620 Eighth Avenue, 32nd Floor
             New York, New York 10018
             Telephone: (212) 218-5500
             Facsimile: (212) 218-5526
             hwexler@seyfarth.com

             -and-

             Kevin R. Brady
             Seaport East
             Two Seaport Lane, Suite 300
             Boston, MA 02210-2028
             Telephone: (617) 946-4979
             Facsimile: (617) 790-5312
             kbrady@seyfarth.com

             *Attorneys for Defendants*
             *Anthem Inc. f/k/a The WellPoint*
             *Companies and Amerigroup Corp.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2017, pursuant to Rule 4(B) of the Individual Practices of the Honorable Sandra J. Feuerstein, I caused to be served the annexed Defendants' Memorandum of Law In Support of Their Motion for Summary Judgment via e-mail and regular mail upon the following counsel of record:

      Neil M. Frank, Esq.
      Anthony V. Merrill, Esq.
      Frank & Associates, PC
      500 Bi-County Blvd., Suite 465
      Farmingdale, NY 11735

                          */s/ Kevin R. Brady*
                          Kevin R. Brady

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                :

PING CHOW WEI,                     :      ECF CASE

                              :

         Plaintiff,        :      Civil Action No.:

                              :

    -against-             :      2:16-cv-00468(SJF)(AKT)

                              :

ANTHEM INC., f/k/a THE WELLPOINT   :      **DEFENDANTS' LOCAL CIVIL**
COMPANIES, AMERIGROUP CORP.,     :      **RULE 56.1 STATEMENT OF**

                              :      **MATERIAL UNDISPUTED**

         Defendants.      :      **FACTS**

                              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

      Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, Rule 56.1 of the Local

Rules for the Eastern District of New York, and Rule 4(b) of the Individual Rules of Hon. Judge

Sandra J. Feuerstein, Defendants Anthem, Inc., f/k/a The WellPoint Companies, and Amerigroup

Corporation (together referred to herein as "Anthem" or "Defendants"), by and through their

attorneys Seyfarth Shaw LLP, respectfully submit this Statement of Material Undisputed Facts in

Support of their Motion for Summary Judgment dismissing the Complaint of Plaintiff Ping

(Lucy) Chow Wei ("Plaintiff") in its entirety.

<u>**ANTHEM AND ITS POLICIES**</u>

      1.      Defendant Anthem, Inc. provides healthcare benefits as an independent licensee

of the Blue Cross and Blue Shield Association.  Until December 2014, Anthem was known as

WellPoint, Inc.  (Declaration of William Yang ¶ 2, hereafter "Yang Decl. at __").

      2.      Defendant Amerigroup Corporation was acquired by WellPoint, Inc. in

approximately December 2012.  (Yang Decl. ¶ 3.)

      3.      At all relevant times, Anthem and its predecessors maintained equal employment

opportunity and affirmative action policies, including policies prohibiting workplace

discrimination, retaliation, and harassment based on, among other things, an employee's age. (Declaration of Kevin R. Brady ¶ 7, **Ex. F**, hereafter "Brady Decl. __"; Deposition of Plaintiff Ping Chow Wei, pp. 67-68, 125-26, attached to the Brady Decl. as **Ex. A**, hereafter "Pl. Dep. __.")

4.      Prior to being acquired by WellPoint, Amerigroup Corporation employees also received a copy of Amerigroup Corporation's Guidebook and Compliance Program upon hire. Plaintiff acknowledged receipt of Amerigroup Corporation's 2007 Guidebook and Compliance Program, which contained express information about the Company's equal employment opportunity and affirmative action policies, including policies prohibiting workplace discrimination, retaliation, and harassment.  (Brady Decl. ¶ 8, **Ex. G**; Pl. Dep. 67-68.)

5.      At all relevant times, Anthem employees, including Plaintiff, could -- and were encouraged to -- access all Human Resources policies and procedures.  These policies and procedures included prohibitions on workplace discrimination, retaliation, and harassment. Employees could access these policies either at work or at home through Anthem's online intranet site, WorkNet.  (Brady Decl. ¶ 8, **Ex. G**; Pl. Dep. 68.)

6.      Plaintiff acknowledged receipt of Anthem's Sales & Marketing, Retention, Community Relations Departmental Guidelines, which encourages employees to access Human Resources policies and procedures through WorkNet.  (Brady Decl. ¶ 9, **Ex. H**; Pl. Dep. 67-68.) Plaintiff further admitted she was aware of Anthem's policies and procedures, and at all times during her employment, she knew she could make a complaint to the Company concerning alleged discrimination, harassment or retaliation through various reporting mechanisms, including to her manager, Human Resources, or Anthem's Compliance Hotline. (Brady Decl. ¶ 9, **Ex. H**; Pl. Dep. 68.)

PLAINTIFF'S HIRING AND EMPLOYMENT WITH ANTHEM

7.    In 2008, Alice Lee was Anthem's Marketing Director and William Yang was the

lead Marketing Representative.  (Deposition of Alice Lee, p. 20, hereafter "Lee Dep. __.")  Ms.

Lee and Plaintiff are friends, as they previously met at the Taipei/Chinese Cultural Center.  (*Id.*;

Pl. Dep. 27, 149.)  Ms. Lee informed Plaintiff of an open position at Amerigroup and

recommended her to come in for an interview. (Lee Dep. 20.)  Despite Plaintiff's lack of

experience working with health insurance and benefits, Ms. Lee recommended that Amerigroup

hire her due to the need for employees in Flushing, New York near where Plaintiff lived.  (Lee

Dep. 20-21.)  As such, Ms. Lee recommended that Amerigroup hire Plaintiff and Mr. Yang (then

age 37) interviewed and made the decision to hire Plaintiff.  (*Id.*)

8.    On March 31, 2008, Plaintiff was hired by Anthem for the position of "Marketing

Representative I" in Anthem's Sales and Marketing Department reporting to Mr. Yang.  Plaintiff

was born on May 30, 1948, and therefore, she was 59 years old at the time of her hire.  (Brady

Decl. ¶ 10, **Ex. I**; Pl. Dep. 40.)

9.    Plaintiff admitted that she did not have any problems with Mr. Yang, stating "I

respect him a lot" and she continued to hold him in high regard during her employment.  (Pl.

Dep. 61, 104.)

10.    Plaintiff acknowledged her "employment at-will" status and that either she or

Amerigroup could terminate her employment relationship at any time, for any reason, with or

without cause. (Brady Decl. ¶ 11, **Ex. J**; Pl. Dep. 42-43.)  Plaintiff further admitted that her at-

will employment status was fair and that she understood that she could leave any time and

Amerigroup could terminate her employment as well. (*Id.*)

11.     Marketing Representatives, including Plaintiff, are typically staffed out of satellite locations referred to as "customer service centers" ("CSC").  (Brady Decl. ¶ 2, Pl. Dep. 282-283; Yang Decl. ¶ 4.)

12.     Between February 10, 2009 and December 2, 2010, Plaintiff received four Corrective Action Forms for her failure to meet the minimum requirements of her job with regard to her production goals, and not "quotas" as incorrectly alleged in the Complaint. (Brady Decl. ¶ 12, **Ex. K**; Pl. Dep. 85-86.) For example, Plaintiff's November 23, 2009 Corrective Action refers a minimum expectation of 40 enrollments in March 2009.  (*Id.*)  Plaintiff worked all that month, but submitted only 37.5 enrollments, and therefore, she was not meeting the minimum requirements of her job. (*Id.*)

13.      On December 2, 2010, after receiving her fourth Corrective Action for not meeting her goals, Plaintiff was placed on Final Warning and told that immediate and sustained improvement was required and that further violations will result in further corrective action, up to and including termination. (Brady Decl. ¶ 12, **Ex. K**; Pl. Dep. 98.)  Plaintiff admitted that she was aware that Mr. Yang could have terminated her employment in December 2010, but he did not do so. (*Id.*)  Plaintiff further admitted her allegation in Paragraph 24 of the Complaint that she had never received any Corrective Actions is false. (Brady Decl. ¶ 12, **Ex. K**; Pl. Dep. 310.)

14.     Plaintiff also admitted that if Marketing Representatives did not reach their goals, then their employment would be terminated.  (Brady Decl. ¶ 2, Pl. Dep. 93, 98, 103.)  Plaintiff also admitted that between February 2009 and December 2010, she was aware that Mr. Yang had terminated the employment of a younger Marketing Representative, Ms. Lin, for her failure to meet her production goals. (Pl. Dep. 103.)

15.     On May 29, 2012, Mr. Yang gave Plaintiff her performance evaluation for 2011, with an overall rating of "B-Successful Performance" (below the highest possible rating of an "A-Exceptional Performance") noting that Plaintiff "worked very hard this year and she has the most successful turnaround story, she saved her[self] from Final C[orrective] A[ction]." (Brady Decl. ¶ 13, **Ex. L**; Pl. Dep. 119.)  Plaintiff agreed with Mr. Yang's comment and admitted that there was nothing discriminatory about her performance evaluation.  (Brady Decl. ¶ 13, **Ex. L**; Pl. Dep. 130.)

16.     Effective November 18, 2012, Plaintiff's title changed to Marketplace Facilitated Enrollment Representative I-NY ("MPFE") and she continued to report to Mr. Yang.  (Brady Decl. ¶ 14, **Ex. M**; Pl. Dep. 135:19-25-136:1-9.)  Plaintiff and all other MPFEs were responsible for providing education on the Affordable Care Act and the Marketplace to potential members. (Pl. Dep. 135:19-24.)  Plaintiff's primary duties included, but were not limited to, providing assistance to the community in understanding the marketplace and the insurance programs it offers; providing individuals and small businesses with assistance in completing their enrollment applications to receive health care coverage; educating potential members on the tools available to help narrow their plan options; and assisting members to compare and contrast the benefits and costs and quality ratings of different plans. (Brady Decl. ¶ 15, **Ex. N**; Pl. Dep. 135-36.) Plaintiff admits that except for education on the Affordable Care Act, the nature of her work did not change in any way from her prior role. (Pl. Dep. 137:7-15.)

17.     In 2013, Anthem opened a new CSC located at 136-52 39th Avenue, Flushing, NY 11354 (the "Flushing CSC") where Plaintiff was assigned to work. (Yang Decl. ¶ 3.)  The majority of MPFEs enrollments is based on walk-ins to high traffic CSCs.  (Deposition of

Andrew Chooi, 30-32, hereafter "Chooi Dep. ___.")  In addition, Anthem required MPFEs to travel within the five boroughs based on business needs. (Chooi Dep. 32.)

18.      In December, 2013, Mr. Yang was promoted to Director, and therefore, he was no longer Plaintiff's direct supervisor.  Instead, Hung (Timmy) Yeo became Plaintiff's direct supervisor. (Pl. Dep. 186-88, 195.)

**PLAINTIFF'S PLANNED RETIREMENT**

19.      In January 2014, Plaintiff, Mr. Yang and Mr. Yeo met to discuss Plaintiff's 2013 performance review.  (Brady Decl. ¶ 15, **Ex. N**; Pl. Dep. 268-69; Deposition of William Yang, 118, hereafter "Yang Dep. ___.")  Plaintiff admitted that in her 2013 review, she had achieved only 72.63% of new business, which was short of her goal of 80% of new business. (Brady Decl. ¶ 15, **Ex. N**; Pl. Dep. 273.)

20.      In April 2014, Anthem hired Andrew Chooi (then age 30) and he then became Plaintiff's supervisor. (Chooi Dep. 23.)  During that time, Anthem had open positions in the Retention Department.  (*Id.*)  As such, Mr. Chooi asked all of the MPFE's in his unit if they were interested in applying for the openings, including Plaintiff.  (*Id.*)

21.      During Plaintiff's mid-year review in July 2014 with Mr. Chooi and Mr. Yang, they, again, offered Plaintiff a position in the Retention Department since she performed well with Anthem's recertification products (though not with generating new business), but Plaintiff rejected the opportunity, stating that she is going to retire and did not want to transfer to the Retention Department.  (Pl. Dep. 118; Chooi Dep. 22-23; Yang Dep. 87,  114-15, 118.)  Again, Plaintiff informed Mr. Chooi that she wanted to remain in her role with her current team until her retirement. (*Id.*)

22.     On November 19, 2014, after Plaintiff returned from a short Paid Time Off ("PTO"), she requested a meeting with Mr. Chooi at the Flushing CSC to discuss her retirement. Plaintiff and Mr. Chooi met on November 25, 2014.  (Yang. Decl. ¶ 6; Chooi Dep. 23.)  During the meeting, Plaintiff asked Mr. Chooi if he could issue her a corrective action or let her go/fire her for low productivity, so she could apply for unemployment.  (*Id.*)  Plaintiff admitted that in the past, she had been issued a corrective action from her former manager for not meeting productivity.  (Pl. Dep. 74-76.) Mr. Chooi responded that he would neither write her up nor fire her and notified Human Resources and Mr. Yang in an e-mail sent the day of his meeting with Plaintiff. (Yang Decl. ¶ 6, **Ex. A**; Chooi Dep. 24.)  Mr. Yang also recalled that Plaintiff had mentioned a few times that she will retire in the coming December. (*Id.*)

**PLAINTIFF'S JULY 2014 REPORT TO ANTHEM'S COMPLIANCE HOTLINE**

23.     Plaintiff admitted that she was aware of Anthem's anti-discrimination policies, and that before July 2014, she never complained to anyone at Anthem that she believed anyone discriminated against her or treated her differently because of her age, or otherwise discriminated against her in any way. (Brady Dec. ¶ 7, **Ex. F**; Pl. Dep 67-68, 190-91, 213.)

24.     Plaintiff further admitted that no one at Anthem discriminated against her or treated her differently because of her national origin, and admitted that her Complaint in this lawsuit is about "age.  Just age." (Brady Decl. ¶ 2,  Pl. Dep. 323.)

25.     On July 14, 2014 and again on July 30, 2014, Plaintiff's son, Isaac Wei, submitted a Compliance Hotline complaint on behalf of Plaintiff ("Hotline Complaint"). (Deposition of Isaac Wei p. 21-25, hereafter "I. Wei Dep. at __"; Declaration of Maritza Villa de Gutierrez, ¶¶ 2-3, **Exs. A, B**, hereafter "Villa de Gutierrez Decl. __.")

26.     Contrary to the allegations of the Complaint that Mr. Yang made comments about Plaintiff's age on a daily basis beginning in June 2011, Plaintiff's Hotline Complaint concerned only four issues that: (a) Mr. Yang made comments about her age, questioned her eyesight and her overall health, and implied that she was physically unfit to perform her job and should quit; (b) on July 10, 2014, during her mid-year review, Mr. Yang had allegedly accused her of stealing another colleague's work, asked about her retirement and told her she would be transferred to the Retention Department in front of her new manager, Mr. Chooi; (c) Plaintiff was assigned to sites that are unprofessional and without adequate equipment such as a table and chair; and (d) Plaintiff had to create her own business cards when she first started in 2008 and alleged that Mr. Yang denied her the business cards.  (Pl. Dep. 214; I. Wei Dep. at 21-25; Villa de Gutierrez Decl. ¶¶ 2-3, **Exs. A, B**.)

27.     Human Resources Business Partner, Maritza Villa de Gutierrez promptly investigated Plaintiff's report, including meeting with Plaintiff, and after completing her investigation, Ms. Villa de Gutierrez concluded that there was no evidence to support Plaintiff's allegations. (Pl. Dep. 214-15; Villa de Gutierrez Decl. ¶ 4, **Ex. C**.)  First, Ms. Villa de Gutierrez interviewed the persons who were in the car when Mr. Yang allegedly made age-related comments to Plaintiff, but again, there is no evidence that Mr. Yang stated that Plaintiff should retire. (Yang Dep. 76-78; Villa de Gutierrez Decl. ¶ 4, **Ex. C**.) Moreover, Plaintiff admitted in her deposition that Mr. Yang did not tell her that her eyes were not well and that she had requested time off for Lasik eye surgery in 2009. (Pl. Dep. 315; Villa de Gutierrez Decl. ¶ 4, **Ex. C**.)  In addition, contrary to the allegations of the Complaint, Plaintiff further admitted that Mr. Yang did not make alleged comments about her age on a daily basis since June 2011, and instead made them only "[o]n occasion." (Pl. Dep. 316-17; Villa de Gutierrez Decl. ¶ 4, **Ex. C**.)

28.    Second, Ms. Villa de Gutierrez interviewed Mr. Yang and Mr. Chooi concerning their July 10, 2014 meeting with Plaintiff, but could not confirm Plaintiff's allegation that she was accused of stealing another colleague's work.  (Pl. Dep. 218; Villa de Gutierrez Decl. ¶ 4, **Ex. C**.)  Although, Mr. Chooi admitted that he asked Plaintiff about her retirement after she raised the issue and he received coaching from human resources, he denied that Mr. Yang stated to everyone that she would be retiring by the end of the year.  (Chooi Dep. 27-28.)  Based on Mr. Chooi's question to Plaintiff about her retirement in response to Plaintiff raising the subject, Human Resources provided a coaching session to Mr. Chooi and Mr. Yang. (Yang Dep. 93; Chooi Dep. 27; Villa de Gutierrez Decl. ¶ 4, **Ex. C**.)

29.    Third, Ms. Villa de Guiterrez interviewed Mr. Yang concerning Plaintiff's assigned worksites and was unable to confirm that Plaintiff was not provided adequate equipment.  (Pl. Dep. 222-23; Villa de Gutierrez Decl. ¶ 4, **Ex. C.**)  Specifically, Mr. Yang stated that Plaintiff did not request a table or chair and was not informed by her that she purchased those items.  (*Id.*) Indeed, Plaintiff admitted that she purchased a chair on her own, and did not tell anyone at Anthem that she did so or request reimbursement for it. (*Id.*)

30.    Finally, Ms. Villa de Guiterrez did not locate evidence to support Plaintiff's allegation that Mr. Yang denied her business cards six years earlier in March 2008 when her employment began.  (Pl.  Dep. 223; Villa de Gutierrez Decl. ¶ 4, **Ex. C**.)  Indeed, Ms. Villa de Gutierrez interviewed Sal Abramov who was responsible for ordering business cards and who reported that business cards are not immediately issued when an associate starts work. (Pl. Dep. 225 ; Villa de Gutierrez Decl. ¶ 4, **Ex. C**.)  Further, Mr. Abramov indicated that he did order business cards for Plaintiff. (*Id.*)  Ms. Villa de Gutierrez further interviewed Ms. Lee, who was unaware of any issues regarding business cards, as she would not usually get involved at that

level and she denied that Plaintiff reported any such issues to her.  (Lee Dep. 26; Villa de Gutierrez Decl. ¶ 4, **Ex. C**.)

31.     Moreover, Plaintiff admits that the Company ultimately provided her business cards within months after her employment began, and more importantly, there was nothing that the Company could do when she failed to report her concerns to anyone for more than six years. (Pl. Dep. 207.)

32.     Plaintiff further admitted that she was satisfied with the results of the Company's investigation as of August 2014. (Pl. Dep. 231-32, 239, 264-65.)  Moreover, Plaintiff further admitted that she was aware that she could complain if she experienced any further problems, and that she did not make any further complaints to the company about the issues she raised to the Compliance Hotline. (*Id.*)

### PLAINTIFF'S AND OTHER MPFE'S TEMPORARY ASSIGNMENTS TO THE CHINATOWN CSC AND COVERING RECEPTIONIST DUTIES

33.     On August 19, 2014, due to a staffing shortage as a result the vacation of MPFE Han Thein (age 60), Mr. Chooi wrote an e-mail to Plaintiff confirming their discussion that Plaintiff would be temporarily assigned to the Chinatown CSC effective August 20, 2014. (Brady Decl. ¶ 16, **Ex. O**; Pl. Dep. 219.)

34.     Plaintiff further admitted that other MPFEs were temporarily assigned to the Chinatown CSC.  Specifically, those MPFEs temporarily assigned to work at the Chinatown CSC included Xiang (Jessica) Chen (age 44), Nathan Nip (age 36), Han Thein, and XiuPing (Ada) Yang (age 36).  (Chooi Dep. 29; Pl. Dep. 279-280.)  None of the MPFEs temporarily assigned to the Chinatown CSC had their production goals changed as a result of the temporary assignment. (Chooi. Dep. 30-32; Yang Dep. 105-107.)  In addition, all MPFEs had the same opportunity for new enrollments based on the high traffic walk-ins to the CSC during the

10

temporary assignment. (*Id.*)  Moreover, contrary to the allegations of the Complaint, Plaintiff did not lose her clients because of the temporary assignment as she continued to perform in the area of retention of enrollments. (Chooi Dep. 23.)

35.     Plaintiff admits that her temporary assignment was for a total of six days within a two-week time period between August 19, 2014 and September 2, 2014.  (Pl. Dep. 278; Chooi Dep. 29-30; Yang Dep. 101-104.)  Plaintiff also admits that her job title, salary and responsibilities were not impacted by the temporary assignment.  (Pl. Dep. 277-78.)

36.     While Plaintiff contacted Ms. Villa de Guiterrez to complain about the temporary assignment, Plaintiff understood it was temporary, and stated, "so I was okay." (Pl Dep. 222. Moreover, Ms. Villa de Gutierrez explained to Plaintiff that her assignment was temporary and that she was not being transferred and that she still reported to Mr. Chooi. (*Id.*)

37.     Contrary to Plaintiff's allegation in the Complaint, her job was not changed to a receptionist.  (Pl. Dep. 282.)  Instead, Plaintiff's role was the same as every other MPFE, which was to provide quality service to Anthem members or prospects.  They would greet Anthem's member/prospect and inquire on the reason for the CSC visit.  The MPFE would then ask questions and triage accordingly.  As such, Plaintiff performed this MPFE function from mid-October 2014 until December 2014.   Moreover, Plaintiff admits that her job title was not changed to receptionist. (Pl. Dep. 284.)

**P**LAINTIFF'S **V**OLUNTARY **R**ESIGNATION **F**ROM **H**ER **E**MPLOYMENT

38.     Plaintiff admits that she did not complain to anyone at the Company concerning any alleged discrimination, or otherwise experienced any further problems after her August 19, 2014 complaint to Ms. Villa de Guiterrez concerning her temporary assignment to the Chinatown CSC. (Pl. Dep. 290.)

39.     In her Complaint, Plaintiff alleges that on November 21, 2014, Mr. Chooi unjustly criticized her overall performance and she responded by stating that she was "being constructively discharged." (ECF No. 1 ¶ 50; Pl. Dep. 323.)  Plaintiff, however, admits she continued to work for an additional month until December 23, 2014. (*Id.*)

40.     Specifically, on December 22 and 23, 2014, Plaintiff sent an e-mail and letter to Human Resources Manager, Maria Munoz submitting her resignation effective December 21, 2014 due to "constructive discharge."  (Brady Decl. ¶ 17, **Ex. P**; Pl. Dep. 293.)  Plaintiff then sent another email requesting that she be allowed to take PTO starting December 24, 2014 and her last day of employment would be December 31, 2014.   (*Id.*)  The basis for Plaintiff's request was to push out her termination date so that she would be eligible to receive her 2014 Annual Incentive Plan bonus ("AIP"), which required her to be an active employee on December 31, 2014 for her to be eligible to receive a bonus payout.  Anthem honored her request.  (*Id.*)

41.     While Plaintiff's correspondence to Ms. Munoz at this time referred to a "constructive discharge," Plaintiff did not provide any facts concerning why she felt compelled to resign.   Instead, during her deposition, Plaintiff admitted that the only event that occurred before she resigned was that Mr. Yang, on a single occasion, gave her a "mean look" during a meeting on December 19, 2014. (Brady Decl. ¶ 17, **Ex. P;** Pl. Dep. 328.)   Plaintiff further admits that after this meeting, no one forced her out, and that she continued to work in the office after the December 19, 2014 meeting, and continued to work after she submitted her resignation letter. (*Id.* 326-28.)

42.     In fact, in her sworn EEOC Intake Questionnaire, Plaintiff stated that the reason for the end of her employment with Anthem was "planned resignation EOY" (End Of Year), not a "constructive discharge."  (Pl. Dep. 304; Brady Decl. ¶ 18, **Ex. Q**.)

12

<u>**A**LLEGED **C**ONDUCT **O**CCURRING **A**FTER **P**LAINTIFF'S **R**ESIGNATION</u>

43.     On July 28, 2016, more than a year and a half after Plaintiff resigned from her employment with Anthem, her attorneys sent a letter to Anthem's counsel, alleging for the first time that Mr. Yang had allegedly directed Ms. Lee to contact Plaintiff in June 2016 to arrange a meeting to deliver a message that if Plaintiff succeeds in this litigation, he will "get revenge by killing Plaintiff's entire family."  (Brady Decl. ¶ 19, **Ex. R**.)  Plaintiff's attorneys claimed that this was the second such incident, alleging that on December 24, 2014, Mr. Yang and Ms. Lee (without Plaintiff present) had a conversation where Mr. Yang "declared he intended to go to Plaintiff's house and 'settle the score.'"  (*Id.*)  As discussed below, Plaintiff's allegations and those advanced by her counsel are demonstrably false.

44.     On July 31, 2016, Plaintiff, with the assistance of her husband, filed a report with the New York City Police Department alleging that she met with Ms. Lee at a "Restaurant/Diner" on June 3, 2016, during which meeting she learned that Mr. Yang sent Ms. Lee to "meet with Complainant with a message that the complainant and family will be killed if Complainant continues with [the] lawsuit against him." (Brady Decl. ¶ 20, **Ex. S**; Pl. Dep. 140.) Plaintiff admitted that she waited nearly two months from the time Ms. Lee allegedly told her on June 3, 2016 about an alleged threat from Mr. Yang until she made the report to the police on July 31, 2016, and therefore, there was no imminent threat of harm to her or her family. (Pl. Dep. 160-61.)  Moreover, Plaintiff admitted that she has had no contact from Mr. Yang since her employment ended in December 2014.  (*Id.*)

45.     Plaintiff also admits that from the time her employment ended on December 31, 2014 to her meeting with Ms. Lee on June 3, 2016, they had remained friends and in contact, yet Ms. Lee never told Plaintiff about any alleged threat made by Mr. Yang. (Pl. Dep. 149.)

Plaintiff further admits that the Police did not take any action on her report, and instead, Ms. Lee would need to pursue the report if any actual threat was made. (Pl. Dep. 54.)

46.     Indeed, Ms. Lee testified that she never reported to Anthem any alleged threat by Mr. Yang.  (Lee Dep. 40.)  Instead, Ms. Lee testified that during a meeting with Mr. Yang on an unspecified date in December 2014, he became upset, and stated that although there is no direct translation from Chinese, he said he would "fuck up your whole family" referring to Plaintiff. (Lee Dep. 48.)

47.     In addition, Ms. Lee admitted that Mr. Yang "did not say kill," stating "that one word is maybe too serious," and that he did not use the word "kill."  (Lee Dep. 48.)  Further, Ms. Lee testified that she believed that Mr. Yang was "stressed" at the time and that she "forgave" him after making the alleged comment that he was going to "fuck up" Plaintiff. (*Id.* 41.) Moreover, Ms. Lee testified that she did not believe that Plaintiff or her family was under any imminent threat or harm from Mr. Yang, and therefore, she did not report the alleged comment to the police, to the Company, or anyone else. (*Id.* 65-67.)

48.     Ms. Lee further admitted that she did not meet with Plaintiff in June 2016 to "deliver a message" from Mr. Yang, but instead, their meeting was as a result of the celebration of the Chinese Moon Festival where Ms. Lee invited Plaintiff to meet with her to exchange chicken and vegetables. (Lee Dep. 54, 70; Pl. Dep. 173.)  During the June 3, 2016 meeting, Ms. Lee told Plaintiff about the conversation she claims she had with Mr. Yang nearly 18 months earlier that she never reported to Anthem, Plaintiff or anyone else. (Lee Dep. 78.)

49.     As such, Ms. Lee's testimony establishes that Plaintiff filed a false police report with the New York City Police Department because Ms. Lee testified that Mr. Yang did not send

her to meeting with Plaintiff to deliver a message, and he not use the word "kill" when referring

to Plaintiff and her family. (Lee Dep. 54, 74.)

    50.    Contrary to the allegations of the Complaint that during an unemployment

insurance hearing in April 2015, Defendants acknowledged that in appropriate comments about

Plaintiff's age were made throughout her employment and that Mr. Yang and Mr. Chooi had

been disciplined for their actions, Plaintiff has not produced any evidence of any such comments.

(Brady Decl. ¶ 21, **Ex. T**, Interrogatory Responses 4-5, 13; Chooi Dep. 40-41; Yang Dep. 124.)

Further, Mr. Yang testified that the Anthem provides training prohibiting asking questions about

employee retirement. (Yang Dep. 82, 93.)  In addition, Mr. Yang and Mr. Chooi further testified

that they received coaching that they should not engage in conversations with employees

concerning any protected categories, including age, but that Mr. Chooi asked Plaintiff about her

retirement, only after she raised the subject with him. (Yang Dep. 93; Chooi Dep. 27.)


Dated: New York, New York
       August 4, 2017
                                    SEYFARTH SHAW LLP

                                    By: /s/ *Kevin R. Brady*
                                    _____
                                       Howard M. Wexler
                                       hwexler@seyfarth.com
                                       620 Eighth Avenue
                                       32nd Floor
                                       New York, NY 10018
                                       Telephone:  (212) 218-3332
                                       Facsimile:  (212) 218-5526
                                       - and-
                                       Kevin R. Brady
                                       kbrady@seyfarth.com
                                       Two Seaport Lane, Suite 300
                                       Boston, MA 02210-2028
                                       Telephone: (617) 946-4979
                                       Facsimile: (617) 790-5312

                                       *Attorneys for Defendants*

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 4, 2017, pursuant to Rule 4(B) of the Individual Practices

of the Honorable Sandra J. Feuerstein, I caused to be served the annexed DEFENDANTS'

LOCAL CIVIL RULE 56.1 STATEMENT OF MATERIAL UNDISPUTED FACTS via e-mail

and regular mail upon the following counsel of record:

      Neil M. Frank, Esq.
      Anthony V. Merrill, Esq.
      Frank & Associates, PC
      500 Bi-County Blvd., Suite 465
      Farmingdale, NY 11735


                              */s/ Kevin R. Brady*
                              Kevin R. Brady

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                  :
PING CHOW WEI,                                    :        ECF CASE
                                                  :
                    Plaintiff,                    :        Civil Action No.:
                                                  :
        -against-                                 :        2:16-cv-00468(SJF)(AKT)
                                                  :
ANTHEM INC., f/k/a THE WELLPOINT                  :
COMPANIES, AMERIGROUP CORP.,                      :
                                                  :
                    Defendants.                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DECLARATION OF KEVIN R. BRADY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I, KEVIN R. BRADY, declare under the penalty of perjury:

1.      I am Counsel with the law firm of Seyfarth Shaw LLP, attorneys for Defendants Anthem, Inc. f/k/a/ The WellPoint Inc., Amerigroup Corp. (together referred to as "Anthem" or "Defendants") in the above-captioned action. I submit this Declaration in support of Defendants' Motion for Summary Judgment.  I know the facts testified to in this Declaration to be true based upon my own personal knowledge, information provided to me, and a review of the documents.

2.      Annexed hereto as **Exhibit A** are true and Correct copies of selected pages from the deposition of Ping Chow Wei ("Plaintiff"), conducted on September 22, 2016 and October 11, 2016 (cited in Defendants' Statement of Undisputed Facts ("the SOF") as "Pl Dep.").

3.      Annexed hereto as **Exhibit B** are true and Correct copies of selected pages from the deposition of William Yang, conducted on October 13, 2016 (cited in "the SOF" as "Yang Dep.").

4.       Annexed hereto as **Exhibit C** are true and Correct copies of selected pages from the deposition of Andrew Chooi, conducted on October 13, 2016 (cited in "the SOF" as "Chooi Dep.").

5.       Annexed hereto as **Exhibit D** are true and Correct copies of selected pages from the deposition of Isaac Wei ("Plaintiff"), conducted on December 13, 2016 (cited in Defendants' Statement of Undisputed Facts ("the SOF") as "Wei Dep.").

6.       Annexed hereto as **Exhibit E** are true and Correct copies of selected pages from the deposition of Alice Lee ("Plaintiff"), conducted on December 13, 2016 (cited in Defendants' Statement of Undisputed Facts ("the SOF") as "Lee Dep.").

7.       Annexed hereto as **Exhibit F** is a true and correct copy Anthem's Equal Employment and Affirmative Action Policy, produced in discovery bearing Bates-stamp numbers D000136 to D000139.

8.       Annexed hereto as **Exhibit G** is a true and correct copy of Plaintiff's Acknowledgement Form of Amerigroup's Amerigroup Corporation 2007 Guidebook - Amerigroup Compliance Program, bearing Bates-stamp numbers D000012, which was marked and identified as Exhibit  5 at Plaintiff's deposition.

9.       Annexed hereto as **Exhibit H** is a true and correct copy of Plaintiff's acknowledgement of the Sales & Marketing, Retention, Community Relations Departmental Guidelines, bearing Bates-stamp number D000127, which was marked and identified as Exhibit 18 at Plaintiff's deposition.

10.       Annexed hereto as **Exhibit I** is a true and correct copy of Plaintiff's offer letter as Marketing Representative I, dated March 11, 2008, bearing Bates-stamp numbers D000001-D000002, which was marked and identified as Exhibit  2 at Plaintiff's deposition.

11.     Annexed hereto as **Exhibit J** is a true and correct copy of Plaintiff's Acceptance of Job Offer and Acknowledgement of "Employment At-Will" Status Form dated March 12, 2008, bearing Bates-stamp numbers D000003, which was marked and identified as Exhibit  3 at Plaintiff's deposition.

12.     Annexed hereto as **Exhibit K** is a true and correct copy of Plaintiff's Corrective Action Forms, dated between February 10, 2009 and December 2, 2010 which were marked and identified as Exhibit  9 at Plaintiff's deposition.

13.     Annexed hereto as **Exhibit L** is a true and correct copy of Plaintiff's Manager Evaluation for the period 1/01/2012 - 12/31/2013, bearing Bates-stamp numbers D000121-D000126, which was marked and identified as Exhibit  17 at Plaintiff's deposition.

14.     Annexed hereto as **Exhibit M** is a true and correct copy of a Title Change Form, dated November 16, 2012 produced in discovery numbered D000111.

15.     Annexed hereto as **Exhibit N** is a true and correct copy of Plaintiff's Manager Evaluation for the period 1/01/2012 - 12/31/2012, bearing Bates-stamp numbers D000112-D000118, which was marked and identified as Exhibit  13 at Plaintiff's deposition.

16.     Annexed hereto as **Exhibit O** is a true and correct copy of an e-mail to Plaintiff dated August 19, 2014 with the Subject: "Assignment," bearing Bates-stamp numbers D000257, which was marked and identified as Exhibit  23 at Plaintiff's deposition.

17.     Annexed hereto as **Exhibit P** is a true and correct copy of a series of e-mails from Plaintiff beginning on December 22, 2014 with the Subjects: "Resignation" and "PTO and last date clarification," bearing Bates-stamp numbers D000405 - D000408, which was marked and identified as Exhibit  24 at Plaintiff's deposition.

18.     Annexed hereto as **Exhibit Q** is a true and correct copy of Plaintiff's Equal Employment Opportunity Commission Intake Questionnaire dated December 12, 2014, bearing Bates-stamp numbers D000427 - D000430, which was marked and identified as Exhibit 26 at Plaintiff's deposition.

19.     Annexed hereto as **Exhibit R** is a true and correct copy of a letter from Anthony V. Merrill, Esq. dated July 28, 2016, which was marked and identified as Exhibit 15 at Plaintiff's deposition.

20.     Annexed hereto as **Exhibit S** is a true and correct copy of a Verification of Crime/Lost Property Form dated August 2, 2016, which was marked and identified as Exhibit 14 at Plaintiff's deposition.

21.     Annexed hereto as **Exhibit T** is a true and correct copy of Plaintiff's Response to Defendant's First Set of Interrogatories dated July 21, 2016, which was marked and identified as Exhibit 28 at Plaintiff's deposition.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  August 4, 2017

　　　　　　　　　　　　　　　_____/s/ Kevin R. Brady_____
　　　　　　　　　　　　　　　　　　　Kevin R. Brady

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
              :
PING CHOW WEI,          :    ECF CASE
              :
      Plaintiff,      :    Civil Action No.:
              :
   -against-        :    2:16-cv-00468(SJF)(AKT)
              :
ANTHEM INC., f/k/a THE WELLPOINT  :
COMPANIES, AMERIGROUP CORP.,   :
              :
      Defendants.     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

    I, WILLIAM YANG, declare under the penalty of perjury:

    1.    I over the age of 18, and am currently employed by Anthem, Inc. ("Anthem") as

Manager Medicaid Plan Marketing and previously held the title, Director Marketing - Plan.   I

am fully familiar with the facts set forth in this declaration based upon my personal knowledge

and a review of Anthem's business records. I respectfully submit this declaration in support of

Defendants' motion for summary judgment on the complaint of Plaintiff Ping Chow Wei

("Plaintiff").

    2.    Defendant Anthem, Inc. provides healthcare benefits as an independent licensee

of Blue Cross and Blue Shield Association.  Until December 2014, Anthem was known as

WellPoint, Inc.

    3.    Defendant Amerigroup Corporation was acquired by WellPoint, Inc. in

approximately December 2012.

4.      Marketplace Facilitated Enrollment Representatives ("MPFEs"), a position formerly held by Plaintiff, are typically staffed out of satellite locations referred to as "Customer Service Centers" ("CSC").

5.      In 2013, Anthem opened a new CSC located at 136-52 39th Avenue, Flushing, NY 11354, where Plaintiff was assigned to work at the time.

6.      Annexed hereto as **Exhibit A** are true and correct copies of e-mails I exchanged with Andrew Chooi on November 26, 2014.   Copies of the emails were maintained by Anthem in the ordinary course of business.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 1, 2017

_____
William Yang

# EXHIBIT A

**From:** Munoz, Maria
**Sent:** Monday, December 01, 2014 1:29 PM
**To:** Yang, Wei
**Cc:** James, Michael
**Subject:** RE: Ping Chow(Lucy) Wei

Ok. Thanks.  Please have her reach out to me.

Maria Muñoz
Human Resource Manager

Amerigroup Corporation
9 Pine Street 14th Floor
New York, NY 10005
P: 212-563-5570 ext. 64349
E: Maria.Munoz@amerigroup.com

 



2011, 2012 & 2013

*A member of the WellPoint family of companies* WELLPOINT
Visit us also on Twitter, Facebook, YouTube and LinkedIn!

  

*We should all leave this world in a better place than the way we found it!—Bob Wychulis*

**From:** Yang, Wei
**Sent:** Monday, December 01, 2014 1:27 PM
**To:** Munoz, Maria
**Cc:** James, Michael
**Subject:** RE: Ping Chow(Lucy) Wei

Hi Maria,

Please see email below from Flushing manager Andrew.

1

D000262

if you remember, this is the same person that I mentioned during our 1-1 last monthly.

thanks

**From:** Chooi, Andrew
**Sent:** Wednesday, November 26, 2014 1:47 PM
**To:** Yang, Wei
**Subject:** FW: Lucy Wei

November 19th or 20th after her vacation.

> **From:** Yang, Wei
> **Sent:** Wednesday, November 26, 2014 12:48 PM
> **To:** Chooi, Andrew
> **Subject:** Re: Lucy Wei
>
> I remember she has mentioned a few times that she will retire in coming December, but when was the last time she told you she will retire?
>
> William Yang
>
> On Nov 26, 2014, at 12:42 PM, "Chooi, Andrew" <Andrew.Chooi@amerigroup.com> wrote:
>
> > Good day William, yesterday Ms. Wei (Lucy) Ping came to me asking for private discussion regarding her retirement in December. As soon we sit in a conference room she asking is possible I could let her go / (fire) her! She claim that her production is low. She do remember in the past she received a Correction Action from previous manager reason her production are low not meet the company standard. Ms. Wei told me in the past company do let go couple people due to that reason, so she could apply for unemployment. I think she might want to change her mind not to retire in December.

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                 :

PING CHOW WEI,                    :     ECF CASE

           Plaintiff,      :     Civil Action No.:

     -against-        :     2:16-cv-00468(SJF)(AKT)

ANTHEM INC., f/k/a THE WELLPOINT  :
COMPANIES, AMERIGROUP CORP.,    :

         Defendants.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

I, MARITZA VILLA DE GUTIERREZ, declare under the penalty of perjury:

1.      I am over the age of 18, and was employed in the Human Resources Department for Anthem, Inc. ("Anthem") and its predecessors, including Amerigroup Corporation, from March 2008 through June 2016. Most recently, I worked as a Human Resources Business Partner for Anthem for approximately two years. I am fully familiar with the facts set forth in this declaration based upon my personal knowledge and review of Anthem's business records. I respectfully submit this declaration in support of Anthem's motion for summary judgment on the complaint of Plaintiff Ping Chow Wei ("Plaintiff").

2.      Annexed hereto as **Exhibit A** are true and correct copies of the Case Details concerning a complaint the Company received on July 14, 2014. Copies of the Case Details report were maintained by Anthem in the ordinary course of business.

3.      Annexed hereto as **Exhibit B** are true and correct copies of the Case Details concerning a complaint the Company received on July 30, 2014. Copies of the Case Details report were maintained by Anthem in the ordinary course of business.

4.      Annexed hereto as **Exhibit C** is true and correct copy of a Compliance Hotline

Response Form, which I prepared as a result of my investigation into Plaintiff's reports to the

Compliance Hotline submitted on July 14 and 30, 2014.  Copies of the Compliance Hotline

Response Form were maintained by Anthem in the ordinary course of business.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the

foregoing is true and correct.

Dated:  August _3_, 2017

_Maritza Villa de Gutierrez_
Maritza Villa de Gutierrez

2

# EXHIBIT A

# CASE DETAILS
## AMGP-14-07-0023

### CONFIDENTIAL MEMORANDUM

| | | | | | |
|---|---|---|---|---|---|
| **Report Initiated** | 2014-07-14 23:09 ET | **Primary Priority** | C | | |
| **Scheduled Follow-up** | | **Case Indicator** | | | |
| **Source** | Web Submission | **Current Status** | New | | 2014-07-14 |
| **Awareness Resource** | Declined | **Case Opened** | | | |
| **Language** | English | **Case Closed** | | | |
| **Documented by** | WEBALLEGATIONSUBMIT | **Days Open** | N/A | | |
| | | **Case Due Date** | 2014-08-03 | | |

| **Allegation** | **Class** | **Priority** | **Primary** |
|---|---|---|---|
| Harassment - Workplace | Diversity, Equal Opportunity and Respect in the Workplace | C | Yes |

| **Location** | **Location Geography** | **Location Function** |
|---|---|---|
| New York - Other | | |
| New York | | |
| United States | | |

| **Parties Involved** | **Party Type** | **Job title** | **Description** |
|---|---|---|---|
| Isaac Wei | Caller | | Son of the AGP employee |
| Other | | | |
| William Yang | Subject | Director | |
| Other (347) 728-3442 | | | |
| wei.yang@amerigroup.com | | | |
| Andrew Chooi | Witness | Manager | |
| Other (917) 772-8855 | | | |
| andrew.chooi@amerigroup.com | | | |

**Issue Summary**

I have been subjected to harassment by Director William Yang, of the Flushing NY Care Center. My son, Isaac Wei, is filing this on my behalf. His contact info: isamov@gmail.com. 917-496-2574.

**Issue Details**



AMGP-14-07-0023 Page 2

I am a Facilitated Enrollment Representative for Healthplus Amerigroup in the Flushing, NY office. I hereby file a complaint of discriminatory conduct and harassment by Director William Yang.

Since I joined the company six years ago, Mr. Yang has perpetually harassed me regarding my age, while also unjustly calling into question my eye sight and overall health. His comments unmistakably imply that I am physically unfit for the position and should thereby quit my post. To date, my job performance has met the standards set by the organization, even earning a citation for excellence in carrying out my brief. It is my understanding that Mr. Yang seeks my departure to secure a vacancy for a member of his patronage network.

This discriminatory pattern of behavior by Mr. Yang extends as far back as my first month on the job, when he was a Manager at the time. I was denied a company business card by Mr. Yang on the basis that I would not last long enough on the job to warrant one. This decision was ultimately overturned by the Director at the time, during a review, who was made aware of the situation when he requested my business card, whereupon I explained I didn't possess one. Mr. Yang was ultimately ordered to secure business cards for me.

Furthermore, throughout my tenure, Mr. Yang endeavored to assign me to work in unfairly adverse environments, at locations void of any sheen of professional presentation, sometimes without so much as a desk or a chair to operate from. I never complained in the face of such misconduct and managerial ineptitude by Mr. Yang, even when suffering through the indignity of being asked -- wholly unprompted and on many an occasion -- "When are you going to retire?" However, recent actions by Mr. Yang went beyond his typical pattern of harassment, necessitating exposure and ultimate relief of the hostile work environment fostered by him.

Last Thursday, July 10, at approximately 3 p.m. EST, Mr. Yang, in his capacity as newly promoted Director, held a small conference with myself and Manager Andrew Chooi in attendance, ostensibly for the purposes of reviewing my job performance. In Mandarin Chinese, Mr. Yang stated that my job performance was good, following that with "you've stolen another colleague's work, perhaps from the new representative in the group [April Tang]". In response, I said "Can you prove it?" There was no immediate reply from Mr. Yang. I then said "You're free to write me up to the top management with your accusations." Again, Mr. Yang did not muster a reply. Later on in the conversation -- unprompted by any comments from me -- Mr. Yang asked me the familiar question, "When are you going to retire?" I responded that it may be by the end of this year when I have earned a satisfactory number of Social Security credit points for retirement, to which Mr. Yang said "Everybody, remember this: she will retire by end of the year." I want to state clearly here that these comments by Mr. Yang were made in full view of Andrew Chooi.

I refuse to tolerate these unjustified accusations and Mr. Yang's pattern of harassment any longer. It would behoove the organization to investigate and remedy the issue before I escalate the matter and file charges with the Equal Employment Opportunity Commission.

| Additional Questions | Answers |
| --- | --- |
| What is the main type of harassment you are reporting? | Verbal |
| Were other people treated the same way? | Yes |
| What is your involvement in the issue? | It happened to me |
| Is this an ongoing issue? | Yes |
| What is the date of the most recent occurrence? | 2014-07-10 |
| Have you reported this issue to anyone within the organization? | No |
| Do you believe that anyone has taken steps to hide this issue? | I do not know |
| Where did the issue occur? | At a location of Amerigroup Corporation |
| What is your relationship to Amerigroup Corporation? | Associate |

**Communication with Reporter**

No Communications found for this call report.

AMGP-14-07-0023 Page 3

| Assignee | Assignment Type | Complete/Removed | Date Assigned | Assigner |
|---|---|---|---|---|
| Shelly Muelchi | Case Investigator | | 2014-07-15 08:46 ET | Fra  Buchanan |

| Assignment Notes | | Date Entered | Entered By |
|---|---|---|---|
| FYI, the assoicate is threatening to report this to EEOC. | | 2014-07-15 08:46 ET | Fra  Buchanan |

**Investigation Notes**

| Date Entered | Entered By |
|---|---|
| 2014-07-15 08:42 ET | Fra  Buchanan |

The office address provided:
Healthplus Amerigroup Customer Care Center
136-52 39 Avenue
Flushing, NY 11354

**Date of Incident**     N/A

**Monetary Field 1:**                          Currency

**Monetary Field 2:**                          Currency

**Monetary Field 3:**                          Currency

**Case Indicator**

**Legally Privileged**
**Reportable to Audit Committee**
**Significant**
**Up the Ladder**

| Related Case | Same Case | Date Added | Added by |
|---|---|---|---|
| No Related case found for this call report. | | | |

**Resolution Details**

No Resolution found for this call report.
**Executive Summary**

**Attachments**

| File Name | Date Added | Uploaded By |
|---|---|---|
| No Case Upload Files found for this call report. | | |

*Client agrees and understands that Global Compliance neither warrants, vouches for, nor authenticates the reliability of the allegations provided in this report.  Client agrees that it shall have the sole responsibility for investigating or otherwise evaluating these allegations and other information provided and to comply with all local, state and federal laws pertaining to the investigation and protection of such information. as well as the protection of all rights of any person or persons accused of any wrongdoing.

EXHIBIT B

# CASE DETAILS
## AMGP-14-07-0049

### CONFIDENTIAL MEMORANDUM

| | | | | |
|---|---|---|---|---|
| **Report Initiated** | 2014-07-30 12:08 ET | **Primary Priority** | C | |
| **Scheduled Follow-up** | | **Case Indicator** | | |
| **Source** | Web Submission | **Current Status** | New | 2014-07-30 |
| **Awareness Resource** | Declined | **Case Opened** | | |
| **Language** | English | **Case Closed** | | |
| **Documented by** | WEBALLEGATIONSUBMIT | **Days Open** | N/A | |
| | | **Case Due Date** | 2014-08-19 | |

| Allegation | Class | Priority | Primary |
|---|---|---|---|
| Discrimination | Diversity, Equal Opportunity and Respect in the Workplace | C | Yes |

| Location | Location Geography | Location Function |
|---|---|---|
| New York - Other New York United States | | |

| Parties Involved | Party Type | Job title | Description |
|---|---|---|---|
| Ping Chow Wei | Caller | Certified Application Counselor | |
| Other (917) 418-4980 Please email; Mandarin Chinese speaker is best for phone contact | | | |
| isamov@gmail.com | | | |
| William Yang | Subject | Director | |
| Other (347) 728-3442 | | | |
| wei.yang@amerigroup.com | | | |
| Andrew Chooi | Witness | Manager | |
| Other (917) 858-5278 | | | |
| andrew.chooi@amerigroup.com | | | |

### Issue Summary

Age discrimination and harassment by Director William Yang. This is essentially a re-submission of the complaint my son filed on my behalf on July 15, 2014 (Case number: 2014-0812).

### Issue Details



DEFENDANT'S EXHIBIT
22
FS 10/11/16
PENGAD 800-631-6989

D000250

AMGP-14-07-0049 Page 2

I am a Certified Application Counselor for Healthplus Amerigroup in the Flushing, New York office. Since I joined the company six years ago, Director William Yang has persistently harassed me about my age by commenting that my eyesight and overall health make me physically unfit for my position. On multiple occasions, as described below, he has pressured me into resigning due to my age and this harassment has occurred privately and in front of colleagues. To date, I have consistently met the standards set by the organization, even earning a citation for excellence in carrying out my responsibilities.

On March 7, 2014, during a shared car ride with William Yang, Ada Yang and Hon Thein back to the Flushing office from a Brooklyn work site, using the occasion of the retirement party for Richard Hong later in the evening as a segue, Mr. Yang remarked that due to my age and health concerns, I should also consider retirement.

I have never complained when faced with Mr. Yang's blatantly unlawful misconduct and have continued to meet the company's performance standards. However, Mr. Yang's recent actions are so egregiously harassing and offensive that it has forced me to seek relief from the hostile work environment that he has created.

On Thursday, July 10, 2014, at approximately 3 p.m. EST, Mr. Yang, in his capacity as Director, held a meeting with myself and Manager Andrew Chooi to review my job performance. In Mandarin Chinese, Mr. Yang stated that my job performance was good and followed that with, "you've stolen another colleague's work, perhaps from the new rep in the group [April Tang]". In response, I said "Can you prove it?" There was no immediate reply from Mr. Yang. I then said, "You're free to write me up to the top management with your accusations." Again, Mr. Yang did not muster a reply. Later on in the conversation—unprompted by any comments from me—Mr. Yang asked me the familiar question, "When are you going to retire?" I responded that it may be by the end of this year when I have earned a satisfactory number of Social Security credits for retirement, to which Mr. Yang asked me for the specific number of credits and the length of time it would take to earn them. I replied that it would about 6 months to earn two credits, to which Mr. Yang said, in a very condescending and emphatic tone: "EVERYBODY, REMEMBER THIS: she will retire by the end of the year." He also sternly stated that I will be transferred to the Retention Department if I do not follow through with retirement by the year's end. I want to state clearly here that Mr. Yang's comments were made in front of Manager Andrew Chooi.

Due to Mr. Yang's pattern of unlawful age discrimination and harassment, I cannot continue to work in such an overtly hostile work environment. I demand that the organization investigate Mr. Yang's conduct and take appropriate disciplinary action against him. Furthermore, I demand that the organization send me a letter stating that an investigation has commenced and that disciplinary action will be pursued against Mr. Yang. If I do not receive the aforementioned letter by the close of business on Friday, August 8, 2014, I will file a formal complaint with the Equal Employment Opportunity Commission pursuant to Title VII of the Civil Rights Act of 1964 and pursue civil action.

Sincerely,

Ping Chow Wei

| Additional Questions | Answers |
| --- | --- |
| What is the main type of discrimination you are reporting? | Age |
| Were other people of the same protected class treated the same way? | Yes |
| Were other people not of the same protected class treated the same way? | No |
| What is your involvement in the issue? | It happened to me |
| Is this an ongoing issue? | Yes |
| What is the date of the most recent occurrence? | 2014-07-10 |
| Have you reported this issue to anyone within the organization? | Yes |
| Do you believe that anyone has taken steps to hide this issue? | I do not know |
| Where did the issue occur? | At a location of Amerigroup Corporation |

D000251

AMGP-14-07-0049 Page 3

What is your relationship to Amerigroup Corporation?          Associate

**Communication with Reporter**

No Communications found for this call report.

| Assignee | Assignment Type | Complete/Removed | Date Assigned | Assigner |
|---|---|---|---|---|
| Shelly Muelchi | Case Investigator | | 2014-07-30 13:56 ET | Fra Buchanan |

| Assignment Notes | | | Date Entered | Entered By |
|---|---|---|---|---|
| This is the same issue as case AMGP-14-07-0043 except the reporter is the associate. | | | 2014-07-30 13:56 ET | Fra Buchanan |

**Investigation Notes**

| Date Entered | | Entered By |
|---|---|---|
| No Case Investigation Notes found for this call report. | | |

Date of Incident          N/A

Monetary Field 1:                              Currency

Monetary Field 2:                              Currency

Monetary Field 3:                              Currency

**Case Indicator**

Legally Privileged
Reportable to Audit Committee
Significant
Up the Ladder

| Related Case | Same Case | Date Added | Added by |
|---|---|---|---|
| AMGP-14-07-0023 | Yes | 2014-07-30 13:53 ET | Fra Buchanan |

AMGP-14-07-0023 was reported by the associate's son.
AMGP-14-07-0049 was reported by the associate.

**Resolution Details**

No Resolution found for this call report.
**Executive Summary**

**Attachments**

| File Name | Date Added | Uploaded By |
|---|---|---|
| No Case Upload Files found for this call report. | | |

D000252

AMGP-14-07-0049 Page 4

*Client agrees and understands that Global Compliance neither warrants, vouches for, nor authenticates the reliability of the allegations provided in this report.  Client agrees that it shall have the sole responsibility for investigating or otherwise evaluating these allegations and other information provided and to comply with all local, state and federal laws pertaining to the investigation and protection of such information, as well as the protection of all rights of any person or persons accused of any wrongdoing.

D000253

# EXHIBIT C

## Compliance Hotline Response Form

**Date Compliance Report Submitted:** 7/14/14 & 7/30/14

**Date Response Submitted:** 8/18/14

**Report ID:** AMGP-14-07-0023 & AMGP-14-07-0049

**Report Investigated and Submitted by:** Maritza Villa de Gutierrez

**Caller:** Isaac Wei & Ping Chow Wei

**Allegations/Findings/Background** (Respond to particulars/allegations outlined in the charge and provide relevant background/details of HR investigation and findings):

**Allegation #1:**
Wei (William) Yang has been harassing Ping Chow Wei due to her age, eyesight and overall health. Specifically, during a car ride on 3/7/14 where she was told by William she should retire due to her age and health concerns

**HR Investigation Details #1:**
HR met with William Yang, XiuPing Yang and Han Thein who were in the car on 3/4/14. This information was gathered during a face to face meeting with Ping Chow Wei to better understand her allegations.

**Findings to Allegation #1:**
Based on the investigation, no one recalls William stating that Ping Chow Wei should retire. The witnesses stated that most of the conversation had in the car were between William and XiuPing Yang.

**Allegation #2:**
On July 10th 2014 during her mid year review Ping Chow Wei states William accused her of stealing another colleague's work, asked her about retirement and would be transferred to Retention in front of her new manager, Andrew Chooi.

**HR Investigation Details #2:**
HR met with Andrew Chooi and William Yang in regards to the July 10th meeting. Andrew denies recalling or even hearing that William told her that she was stealing another colleagues numbers or anything pertaining to that piece of the conversation. Andrew did state they talked about her high renewal numbers and they needed to shift those numbers where the majority is new business. Andrew states he asked about retirement but denies hearing William state to everyone she would be retiring by end of year. Additionally, Andrew did confirm a conversation about transferring to Retention based on a previous conversation but not that William would transfer her if she did not retire by end of year.

**Findings to Allegation #2:**
Based on the investigation, HR is unable to confirm the allegations set forth on this hotline complaint. However, HR was able to confirm the inappropriate question in regards to retirement and will be having a coaching session with both William and Andrew.

D000235

**Allegation #3:**
Ping Chow Wei states she has been given sites that are unprofessional without adequate equipment. Ping Chow states she even had to buy a table and chair to work in certain locations.

**HR Investigation Details #3:**
HR met with William and he stated she had a few sites where they were in drug stores, supermarkets or doctor's offices but was given everything she needed if requested. William states she did not request a table nor chair and was not informed by her that she purchased these items.

**Findings to Allegation #3:**
Based on the investigation, HR is unable to confirm the allegations set forth on this hotline complaint as there were no other witnesses.

**Allegation #4:**
Ping Chow Wei states she has had to create her own business cards when she first started in 2008 as she was denied them from William.

**HR Investigation Details #4:**
HR met with Sal Abramov who was/is responsible for ordering business cards. Sal stated business cards were not immediately issued when the associate first started. Additionally, they were only allowed a number of business cards per director to the lead at the time, Jim Olmstead. Sal does recall order business cards for Lucy but could not confirm when they were done since they have moved from vendors and would not have records of when they were originally placed. HR also met with Alice Lee who stated she was unaware of any issues in regards to business cards as she would not get involved to that level and denies Ping Chow coming to her in regards to this issue.

**Findings to Allegation #4:**
Based on the investigation, HR is unable to confirm the allegations set forth on this hotline complaint.

**Business Decision and HR actions:**
HR meet with William and Andrew in regards to the inappropriate question which was validated in regards to Ping Chow's retiremen. HR also met with Ping Chow Wei to notify her that her other allegations could not be corroborated. However, if other instances occurred to notify HR immediately.

**Conclusion:**
There is no evidence to support the above allegations.

D000236